EDWARD G. JANEWAY AND ELINOR W. JANEWAY (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT McC. SHIELDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 110034, 111589.   Promulgated June 22, 1943.

*Harrison Lillibridge, Esq.*, for the petitioners.
*William G. Ruymann, Esq.*, for the respondent.

200

## OPINION.

Disney, *Judge:* The petitioners contend that they were mere creditors of Thomas Associates, Inc.. that the notes held by them became worthless in the taxable year and were charged off. and that they properly deducted the entire amount thereof as worthless debts in the taxable year. One of the amendments to section 23 (k) of the Internal

Revenue Code. made by section 124 (a) of the Revenue Act of 1942,[1] has the effect of making the deduction for worthless debts depend solely upon the fact of worthlessness. and eliminates the necessity of an ascertainment of worthlessness and an actual charge-off by the taxpayer. Under section 124 (d) of the 1942 Act, that amendment is effective with respect to taxable years beginning after December 31, 1938. and is therefore applicable here. The respondent. not denying the worthlessness, contends, in effect. simply that the petitioners held capital assets because "beneath the outward appearance of the so-called 6% notes was a conception of a contribution to the capital of Thomas Associates, Inc.," and that therefore section 117 of the Internal Revenue Code,[2] was properly applied by the allowance under the schedule of section 117 of deduction of only 50 percent of the amounts claimed by the petitioners. This requires consideration of section 23 (g) (2) and (3) of the Internal Revenue Code.[3] defining shares of stock as securities and providing that if such securities become worthless and are capital assets. the loss resulting shall "be considered" as a loss from sale or exchange. for mere worthlessness of stock. without sale or exchange would not, in the absence of section 23 (g) (2) and (3) permit application of the schedule set forth in section 117.

---

[1] SEC. 124. DEDUCTION FOR BAD DEBTS. ETC.

(a) GENERAL RULE.—Section 23 (k) (relating to bad debts and securities becoming worthless) is amended to read as follows:

"(k) BAD DEBTS.—

"(1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part. the Commissioner may allow such debt, in an amount not in excess of the part which becomes worthless within the taxable year; as a deduction. This paragraph shall not apply in the case of a taxpayer other than a bank. as defined in section 104. with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection."

\* \* \* \* \* \* \*

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation. only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \* \* \*

50 per centum if the capital asset has been held for more than 24 months.

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(g) CAPITAL LOSSES.—

\* \* \* \* \* \* \*

(2) SECURITIES BECOMING WORTHLESS.—If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year. of capital assets.

(3) DEFINITION OF SECURITIES.—As used in this paragraph (2) of subsection the term "securities" means (A) shares of stock in a corporation, and (B) rights to subscribe for or to receive such shares.

Our examination of this interesting question convinces us that the petitioners held securities under section 23 (g) (2) and (3). The substance, and not the form of what was done, controls for the tax purpose here involved. Although the parties did set this matter up on the corporate records as one of issuing notes plus stock, and although the petitioners contend that the stock was a mere bonus in consideration of the loan of money to the corporation, in our view one salient fact requires a negative answer to such contention: All of the corporate stock issued in connection with the advancements of money was issued in direct proportion to the amount of money put out by the stockholders; that is to say, that for each $1,000 advanced by the two petitioners, by White and by Thomas, the other stockholders, each received six-tenths of a share of stock. The fact that for the last $1,000 advanced by each no stock was issued was, under the evidence, mere inadvertence. It was issued, as was all the other stock, under the resolution of March 8, 1934, providing for the issuance of the six-tenths share of stock for each $1,000. Considering the fact of such issuance in precise proportion to the amount of money advanced by the stockholders, we can not hold the stock, although issued in small quantities, to be a mere bonus, of no consequence to the present question; for the fact that the stock was issued in small quantities is immaterial, since the entire stock issue was cnly 22.8 shares.

Not only are the petitioners not mere creditors, but also stockholders, but when they received the notes and stock they received pro rata control of the corporation through ownership of its stock in proportion to the amount of money advanced. Had the corporation earned large amounts of money, the petitioners would have been entitled to the whole thereof, that is, in accordance with their portion of the 22.8 shares of stock extant. In such a situation, we think we may not regard the stock as a mere bonus given because of the loan of money, as in substance the petitioners view the matter. The effect was that in return for the money and in exact proportion thereto, the petitioners and the other stockholders received a capital interest in and control of the corporation, and all of its assets, earninçs, and profits. The effect would have been in nowise different had 1,000 shares issued for each $1,000 contributed, for the stockholders, including the petitioners, controlled the corporation just as effectively with 22.8 shares of stock as they would have with several thousand shares, they having, though in small amount, the entire capital stock. Though, as petitioners argue, it was their intention to receive notes for the money put out by them, it was also their intention to receive, and they did receive with the other stockholders in like position as to advancements, the entire issued capital stock of the corporation and all the control and value it entailed, in proportion to the money which went into the corporation. Though the advances made were, by the issuance of

the notes, given the appearance of loans, the possibility of repayment was no stronger than the business and its possible success. No other money was paid in for stock, so that the advances constituted the corporation's only source of working capital.

Ordinarily a loan to a corporation, if not otherwise secured, has the assurance of capital having been paid into the corporation so that the assets purchased therewith are subject to the payment of the loan. Here the "loans" constituted the sole capital, with no other assets subject to repayment. The effect of what was done is the same as if the petitioners and the other stockholders purchased the stock with the money advanced, and became pro rata owners of the corporation. The fact that at a later period, after they had ceased advancing money, they permitted the issuance of 250 shares of stock to Thomas as bonus or additional compensation for services, does not alter essentially the fact that the petitioners, at the time of acquisition of their stock and notes, made a capital contribution to the corporation proportionate to stock issued. In the taxable year they still retained not only the notes but the stock. Under such circumstances, it is our opinion that the petitioners stock comes within the definition of securities under section 23 (g) (3) and that, such stock having become worthless during the taxable year, the loss resulting therefrom must "be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets." It is not argued that the petitioners holdings, whether considered stock or notes, were not capital assets. Nor is any question raised as to the proper percentage being applied by the Commissioner to the amounts involved if section 117 is applicable.

We therefore conclude and hold that the Commissioner did not err in allowing deduction of only 50 percent of the losses sustained by the petitioners in the taxable year.

*Decision will be entered for the respondent.*