Michael Cohen v. Commissioner. Herman M. Stein v. Commissioner.
Cohen v. Commissioner
Docket Nos. 205, 206.
United States Tax Court
1944 Tax Ct. Memo LEXIS 327; 3 T.C.M. (CCH) 236; T.C.M. (RIA) 44084; March 18, 1944
*327 A. Loeb Salkin, Esq., for the petitioners. Scott A. Dahlquist, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax for 1940 of $1,326.52 and $2,648.02, respectively. The question in issue is whether the petitioners are entitled to bad debt deductions in the computation of taxable net income for 1940 or did they sustain capital losses limited by the provisions of section 117 (d) I.R.C., as amended by section 212 of the Revenue Act of 1939. Findings of Fact The petitioners are individuals residing in New York, N. Y., with business address at 76 Ninth Avenue. They filed their income tax returns for the year 1940 with the collector of internal revenue for the second district of New York. In the income tax return filed by Michael Cohen a deduction was claimed on account of alleged bad debts in the amount of $3,546.86, which deduction was explained therein as follows: Bad Debt Advances (net) to Edwards Development Corporation on notes made on October 23, 1939, ascertained and written off as bad and uncollectible in 1940. Company was liquidated *328 in 1940. Total advances made
$4,666.67
Less recoveries in liqui-
dation
1,119.81
Net bad debt
$3,546.86
In the income tax return filed by Herman M. Stein a deduction was claimed on account of alleged bad debts in the amount of $7,093.72, which deduction was explained therein as follows: "Taxpayer advanced to Edwards Development Company $9,333.33. The taxpayer had a one-third interest in the stock of this Company, formed to acquire leasehold or royalty interests in Illinois. A leasehold was acquired and an oil drilling operation was commenced. This proved to be a dry hole, and in 1940 the property was abandoned by the Company as a total loss, and the Edward [s] Development Company dissolved. "The Company was able to repay only $2,239.61 of the taxpayer's loan, leaving the remainder of $7,093.72 a bad debt." These deductions were disallowed as bad debts by the respondent in the determination of the deficiencies and treated as short-term capital losses. During 1940 the income of both petitioners consisted of salaries received from the Davega-City Radio Co., Inc., directors' fees, dividends, and profits derived from the sale of securities. During 1938 Sidney Harris, *329 an attorney, who was an officer and director of various oil companies, discussed with petitioner Herman M. Stein the business possibilities in the oil fields of the State of Illinois, particularly in view of the development of new oil fields in Edwards County. At that time Harris was president of the Mammoth Producing & Refining Corporation, a company engaged in leasing and developing oil properties, and as part of the proposed plan it was suggested that if petitioner and his associates were willing to invest funds in such a venture the purchase of royalties could be made through that corporation. This plan was agreed to by Stein. On September 5, 1939, Sidney Harris, as president of the Mammoth Producing & Refining Corporation addressed a letter to Herman M. Stein confirming the arrangement theretofore reached. This letter stated that the two petitioners were to advance the sum of $15,000; that with this money royalty interests and/or royalty leases in Wabash and Edwards Counties, Ill., would be purchased and the interests therein were to be owned by Harris and the two petitioners in the following proportions: Sidney Harris, one-half interest, and Herman M. Stein and Michael Cohen *330 two-thirds and one-third share, respectively, of the remaining one-half interest. It was further stated that all oil interests and/or oil leases would be purchased in the name of Harris and then transferred to the three members of the venture in accordance with their respective interests and that the liability of those participating in the venture would be limited to the original investment made therein and proceeds realized from the sale of royalties or oil would be used for the reimbursement of the money advanced by the petitioners before any distribution of the profits. On September 7, 1939, Herman M. Stein delivered to Sidney Harris his check for $15,000 made payable to Sylvester & Harris, the law firm of which Harris was a member, which check was deposited to a special account in a bank. This sum included $5,000 invested in the venture by Michael Cohen. Subsequently, Harris suggested to petitioner Stein that due to activity in the oil fields and the high prices of royalties it would be advisable to acquire a lease for drilling of oil wells instead of purchasing royalties and that such drilling could be done by Mammoth Producing & Refining Corporation. It was further suggested *331 that on account of the personal liability which might be involved in such operations a corporation be formed by the petitioners. This was agreed to by the petitioners. Pursuant to the above arrangements between the parties, a corporation known as Edwards Development Corporation was duly organized under the laws of the State of Illinois on September 29, 1939, with an authorized capital of 100 shares without par value and in its certificate of incorporation it was specifically provided that the 100 shares of its capital stock were to be sold for an adequate consideration of $1,000. Thereafter the incorporators of the corporation duly held formal meetings for the purpose of completing the organization of the corporation a board of directors was duly elected and such board of directors duly held the usual organizational meetings and duly elected officers of the corporation. At the first meeting of Edwards Development Corporation, which was held on October 23, 1939, a resolution was duly adopted, which reads as follows: "RESOLVED, that in the opinion of the Board of Directors that the fair and reasonable value of the capital stock of this corporation at the present time is $10 per share *332 and the proper officers of this corporation be and they hereby are directed to issue and sell one hundred shares of the capital stock thereof at such figure." Petitioner Herman M. Stein, on his own behalf and on behalf of his associates instructed Sidney Harris, as their attorney, to pay to Edwards Development Corporation the sum of $15,000 theretofore deposited with Sylvester & Harris and to cause the corporation to take appropriate action with respect to the issuance of its capital stock. The certificates were issued as follows: Michael Cohen
33 1/3 shares
Herman M. Stein
33 1/3 shares
Fannie M. Stein
16 2/3 shares
Herman M. Stein as Trus-
tee under Declaration of
Trust dated Oct. 30, 1937
16 2/3 shares Sidney Harris was elected vice-president and secretary of the newly organized corporation. On October 27, 1939, and November 25, 1939, Fannie M. Stein paid to Herman M. Stein, her husband, the amounts of $100 and $66.67, respectively, for 16 2/3 shares; and on the same dates Herman M. Stein, as Trustee under Declaration of Trust dated October 30, 1937, paid to himself individually, the respective amounts of $100 and $66.67. The trust referred to was created by Herman *333 M. Stein for the benefit of his son. These amounts were in payment for 16 2/3 shares of the capital stock of the Edwards Development Corporation acquired by the trust from Herman M. Stein. With the aforesaid funds received by Sidney Harris a lease was purchased jointly by the Mammoth Producing & Refining Corporation and the Edwards Development Corporation for the sum of approximately $8,500, each owning a 50 percent interest therein, and drilling was commenced. These operations proved a failure. No entries covering the aforesaid transactions were made on the books of the Edwards Development Corporation until some time subsequent to July 31, 1940, the accountant basing such book entries on information gained from minutes of the meetings of the board of directors and the stock certificate book. The aforesaid sum of $15,000 paid to petitioners by the Edwards Development Corporation was the only working capital of the corporation during its corporate existence. No notes or other evidences of indebtedness were given by Sidney Harris or the Edwards Development Corporation to petitioners of the aforesaid sum of $15,000, nor was there any understanding between them that any notes or other *334 evidences of indebtedness were to be given. The board of directors of the Edwards Development Corporation did not assume any liability on behalf of the corporation with respect to loans from the petitioners, nor did they confirm any arrangement by the corporate officers obligating the corporation for such a loan. On September 9, 1940, the Edwards Development Corporation filed with the Secretary of State of the State of Illinois articles of dissolution and at about the same time a small amount of cash remaining in the corporate treasury was distributed to the petitioners. The monies paid to the Edwards Development Corporation by Michael Cohen and Herman M. Stein, and their associates, in the respective amounts of $5,000 and $10,000 represented an investment by them in the Edwards Development Corporation; the losses resulting from the liquidation of the corporation are capital losses subject to the limitations of section 117(d) of the Internal Revenue Code, as amended by section 212 of the Revenue Act of 1939. Opinion It is the contention of the petitioners herein that together they invested $1,000 in the capital stock of the Edwards Development Corporation and that they also loaned *335 to it an amount of $14,000, Michael Cohen having loaned one-third of the amount and Herman M. Stein two-thirds. They contend that the loans in excess of the distributions of cash became worthless during the year 1940 and that they are entitled to deduct such amounts from gross income as debts which became worthless during the calendar year 1940. The respondent does not deny that the petitioners had losses in the amounts claimed by them. He argues, however, that Michael Cohen invested $5,000 in the stock of the Edwards Development Corporation and Herman M. Stein $10,000 and that upon the liquidation of the corporation in 1940 the investments became a total loss except for the small amount of cash received by each. We think that from the standpoint of substance the respondent's contention is correct. Clearly all monies advanced by the petitioners to the Edwards Development Corporation were at the risk of the business. The corporation had no assets besides the $15,000 that was paid into it by the petitioners. They knew at the time that the investments were made the monies would be lost if the oil well that was to be driven on the leased premises proved to be a dry hole. It did prove *336 to be a dry hole. No differentiation can be made between the amounts invested in the stock of the corporation and the loans to the corporation. The facts in these proceedings are analogous to those in Edward G. Janeway, 2 T.C. 197. In that case the taxpayers and others advanced money to a corporation receiving notes and corporate stock in direct proportion to the amount of money invested by the stockholders. The corporation had no assets or capital except the advances so made. We held that the taxpayers owned securities and that the loss resulting from the dissolution of the corporation was limited under the statute as a loss from the sale or exchange of capital assets. Likewise, in Joseph B. Thomas, 2 T.C. 193, we held that monies advanced by a taxpayer to a corporation in 1938 and early in 1939 constituted a capital investment in and not a loan to the corporation and that since the investment became worthless in the tax year 1939 the loss thus sustained was a capital loss, the deductibility of which was limited by section 23 (g) (1) and (2) of the Revenue Act of 1938. The above cited cases are dispositive of the *337 present proceedings. Decisions will be entered for the respondent.