580

## GUSSOW, KAHN & CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16970.    Promulgated October 19, 1949.

*Abraham Kraditor, Esq.*, for the petitioner.
*E. Randolph Dale, Esq.*, for the respondent.

582

**OPINION.**

HILL, *Judge* : Respondent agrees that petitioner advanced the sum of $11,334.43 to Tomorrow's Masterpieces at various times during 1943 and 1944 and that petitioner has incurred a loss of that amount.   He contends, however, that such loss is not deductible in the taxable year 1944 because, first, it is not a bad debt pursuant to section 23 (k) of the Internal Revenue Code; second, it did not represent an investment in

worthless stock within the purview of section 23 (g) (4) of the Internal Revenue Code; and, third, "the investment of petitioner in Tomorrow's Masterpieces has not been shown to be worthless in 1944."

We believe that the amount of $11,334.43 involved, less the advances made on November 22, 1944, and December 8, 1944, or the amount of $600, is deductible by petitioner from its income for the year involved under section 23 (g) (4) of the Internal Revenue Code.[1] The record shows, as required by that section, (a) that Tomorrow's Masterpieces was an affiliated corporation of petitioner, and (b) that its securities became worthless during the taxable year 1944.

Tomorrow's Masterpieces was affiliated with petitioner during the year involved, for the purpose of section 23 (g) of the code, if (A) at least 95 per cent of each class of the former's stock was owned directly by the petitioner, (B) more than 90 per cent of its income was from sources other than those set forth in section 23 (g) (4) (B), which is quoted in the margin, and (C) the petitioner was a domestic corporation.

We are convinced that the petitioner held securities within the meaning of section 23 (g) of the code. The term "securities" is defined by section 23 (g) (3) as "(A) shares of stock in a corporation, and (B) *rights* to subscribe for or *to receive such shares*." (Italics supplied.) Although Tomorrow's Masterpieces has never issued any of its capital stock, petitioner had the legal right to direct the issuance to itself of all of the authorized capital stock of Tomorrow's Masterpieces and, in legal effect, therefore, petitioner directly owned in 1944 100 per cent of its stock. Petitioner's advancements to Tomorrow's Masterpieces constituted the only capital which the latter had and the record clearly establishes that no one else was entitled to any share of the unissued stock. Petitioner had the sole proprietary interest in Tomorrow's Masterpieces and had complete control of its activities. The advances by petitioner were accordingly capital contributions to To-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(g) CAPITAL LOSSES.—

(1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.

* * * * * * *

(4) STOCK IN AFFILIATED CORPORATION.—For the purposes of paragraph (2) stock in a corporation affiliated with the taxpayer shall not be deemed a capital asset. For the purposes of this paragraph a corporation shall be deemed to be affiliated with the taxpayer only if:

(A) at least 95 per centum of each class of its stock is owned directly by the taxpayer; and

(B) more than 90 per centum of the aggregate of its gross incomes for all taxable years has been from sources other than royalties, rents (except rents derived from rental of properties to employees of the company in the ordinary course of its operating business), dividends, interest (except interest received on deferred purchase price of operating assets sold), annuities, or gains from sales or exchanges of stocks and securities; and

(C) the taxpayer is a domestic corporation.

morrow's Masterpieces in proportion to its ownership of the rights to the latter's capital stock. *Edward G. Janeway*, 2 T. C. 197; affd., 147 Fed. (2d) 602.

There is some evidence that might be said to militate against such conclusion; that is, the advances in question were recorded on the books of petitioner as loans to Tomorrow's Masterpieces and such advances were recorded on the books of the latter as loans payable to the petitioner. Book entries, however, are evidentiary merely and not conclusive. The decision must rest upon the actual facts. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179; *Woods Lumber Co.*, 44 B. T. A. 88, 92; *North American Coal Corporation*, 32 B. T. A. 535, 542. An examination of all the facts convinces us that the advances were not loans, but were petitioner's investment in the capital stock of Tomorrow's Masterpieces.

It is stipulated that 100 per cent of the income of Tomorrow's Masterpieces was from sources other than those listed in section 23 (g) (4) (B) of the code, and that petitioner is a domestic corporation. See section 23 (g) (4) (C). We hold, therefore, that Tomorrow's Masterpieces was an affiliated corporation of petitioner during the year involved within the meaning of section 23 (g) (4) of the code.

The gist of respondent's argument on the point that the "investment" represented by the advances of petitioner was not shown to be or to have become worthless in 1944, is that the solvency of Tomorrow's Masterpieces was dependent from the beginning on advances by petitioner and that so long as such advances were continued it can not be held that Tomorrow's Masterpieces was insolvent. Petitioner made advances to Tomorrow's Masterpieces on November 22 and December 8, 1944, of $300 each, and on January 12 and 31, 1945, petitioner advanced to Tomorrow's Masterpieces $300 and $500, respectively. Petitioner's advances having continued beyond the year 1944, respondent contends that the loss, if any, which petitioner sustained did not occur in 1944. In other words, respondent contends that, so long as petitioner continued to advance funds to Tomorrow's Masterpieces, the latter was a going concern and its business venture had prospects of potential success.

The above stated contention is negatived by the evidence, which clearly demonstrates the utter failure of the venture as of the beginning of November 1944. At that time there was no hope of recovering the investment of petitioner, and that was the identifiable event which determined the worthlessness of the securities. As said by the United States Court of Appeals for the Second Circuit in *Deloss* v. *Commissioner*, 28 Fed. (2d) 803, 804: "So far as human foresight could go, the shares were worthless, and the petitioner might have deducted the loss."

We also believe the language of the United States Court of Appeals for the Fourth Circuit in *Forbes* v. *Commissioner*, 62 Fed. (2d) 571, 574, is appropriate here:

We are not dealing with a case where there was hope that a business although involved might be saved and value in the stock established. Hope had been abandoned and liquidation had been ordered.

See also *Smith* v. *Helvering*, 141 Fed. (2d) 529. So we believe in the instant proceeding that petitioner was justified in determining that its investment in Tomorrow's Masterpieces was worthless in 1944, and we so hold.

Petitioner is not entitled, however, to deduct the entire amount of $11,334.43 as claimed. The stipulation shows that petitioner advanced to Tomorrow's Masterpieces after the first part of November, when it was determined it would be liquidated, the amount of $600. It has not been shown that there was any obligation to make such payment. We do not believe that a taxpayer should be permitted to deduct a loss for advances made to its wholly owned subsidiary after it is decided, as it was here, that such subsidiary will be liquidated. Such advances could not and were not intended to rehabilitate the venture and restore its prospect of success.

We therefore conclude that, except for the $600 advanced after November 1, 1944, petitioner may deduct the advances involved from its gross income for its taxable year 1944. In other words, it may deduct by reason of such advances the amount of $10,734.43.

Petitioner raised by its pleadings a question concerning the deductibility of $525.69 for traveling expenses for the year 1944. However, it did not present any evidence with respect to this issue at the hearing, nor refer to it on brief. We therefore shall consider it abandoned.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

MURDOCK, *J.*, dissenting: The prevailing opinion allows deductions for capital losses, representing all advances made by the petitioner to its wholly owned subsidiary except those made after the determination to liquidate the subsidiary. The advances were all of the same class and made for the same purpose. They should all be allowed as deductions, regardless of whether made before or after the determination to liquidate. The petitioner obviously made those after the determination to liquidate in order to bail itself out of the situation into which it had already gotten and to which it was committed. Cf. *Daniel Gimbel*, 36 B. T. A. 539; *Shiman* v. *Commissioner*, 60 Fed. (2d) 65. The affairs of the subsidiary had to be wound up, and the

amounts of $300 paid on November 22 and $300 on December 8, 1944, were paid during the taxable year for that purpose. That money was just as necessary and was just as lost as a part of the cost of the capital asset as the money previously advanced. The point is that the petitioner had to go on paying for this "asset" even after it had become worthless. *George H. Stanton*, 36 B. T. A. 112; *C. H. White*, 15 B. T. A. 1375, 1386–1387.

BLACK and OPPER, *JJ.*, agree with this dissent.