ALFRED R. BACHRACH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26810. Promulgated June 10, 1952.

*Alan Demar, Esq.*, for the petitioner.
*Michael J. Kenny, Esq.*, for the respondent.

480

482

## OPINION.

TURNER, *Judge:* Petitioner contends that he is entitled to the deductions of both amounts for the reasons that the sum of $2,467.71 was a business bad debt that resulted from the worthlessness of alleged loans which he had made to that extent to the Est Company·and the amount of $525 was a loss he had sustained by giving his promissory note in guaranty of payment of that much of a mortgage owed by Dune Realty Corporation, which resulted in the corporation's property being released from the mortgage.

The first question is whether the advances were contributions to capital or loans. If they were loans, we then have the question of whether they were business or nonbusiness debts, the answer to which in turn depends on whether petitioner was in the business of making loans to corporations, as he contends.

Section 23 (k) (1) and (4), Internal Revenue Code[1] permits, respectively, deductions of business bad debts and nonbusiness debts, while capital loss deductions are permitted by section 23 (g), but only to the extent as provided in section 117, the applicable subsections of which are (a) (1) and (b),[2] under which respondent made his determination.

The parties are at issue on whether the advances involved are to be treated as business bad debts or contributions to capital. In order that the sum of $2,467.71 be allowed as a business bad debt deduction, petitioner must show not only that his advances to Est Company were loans and not contributions to capital but that he was in the business of making loans to corporations.

Petitioner claims that he had been in the business of organizing corporations and making loans to them; that he had been so engaged

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.

\* \* \* \* \* \* \*

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more then 6 months. The term "nonbusiness debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

[2] SEC. 117. CAPITAL GAINS AND LOSSES.
(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer;

\* \* \* \* \* \* \*

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income:

100 per centum if the capital asset has been held for not more than 6 months;
50 per centum if the capital asset has been held for more than 6 months.

over a long period of years; that it was his intention to establish a creditor-debtor relationship with the corporations, as well as a proprietary interest in them; and, that that intention, as well as the low capitalization of the corporations, was due to the risk involved in handling the properties acquired. Petitioner relies on *Vincent C. Campbell*, 11 T. C. 510, and claims the facts of that case are on all fours with the facts herein. However, we think not. In it the parties were agreed that a debt was owing to the taxpayer. The question was whether the debt was a business or a nonbusiness debt under section 23 (k) (4). Here we have a dispute as to there being a debt, and our question arises under section 23 (k) (1).

Est Company was organized with a small amount of capital, which was inadequate for the carrying out of its purpose of acquiring certain property or for its operations. The stockholders knew so in advance of forming Est Company, and followed their usual pattern and their agreement by advancing the necessary funds so that the purpose of the company could be carried out. Their advances were made in the same proportion as their original capital contributions, which invites scrutiny of the true nature of the stockholders' advances to the company. *Wilshire & Western Sandwiches, Inc.* v. *Commissioner*, 175 F. 2d 718. There was no evidence of a loan, such as a note, no provision for, or expectation of, the payment of interest and no fixed date for the repayment of the so-called "loans." See *United States* v. *South Georgia Railway Co.*, 107 F. 2d 3; *Daniel Gimbel*, 36 B. T. A. 539; and *Commissioner* v. *O. P. P. Holding Corporation*, 76 F. 2d 11, affirming 30 B. T. A. 337. Petitioner's only security was the corporation itself and that was speculative. It thus appears that petitioner was not a maker of loans but was an investor.

A similar question to the one we have here was presented in *Isidor Dobkin*, 15 T. C. 31, affd. *per curiam* (C. A. 2), 192 F. 2d 392. In it the taxpayer and three associates organized a corporation to hold and manage a parcel of New York City business property. Approximately $27,000 was required to finance the purchase over and above outstanding first and second mortgages. Dobkin and his associates each paid $7,000, of which $500 was designated capital stock and the remaining $6,500 was set up on the corporation's books as "Loans Payable." When additional working capital was required, the equality of investment was maintained by equal contributions. It was held that the entire amount paid in by Dobkin was intended to be risk capital and his loss upon liquidation of the corporation was not deductible in full as a bad debt but was deductible as a capital loss subject to the limitations of section 117. Language apropos to the instant case appears in the opinion, at page 32, as follows:

Petitioner's contention that the funds which he paid in to Huguenot should be treated as loans so as to entitle him to a bad debt deduction on the corpora-

tion's liquidation runs squarely into our decision in *Edward G. Janeway*, 2 T. C. 197, affd., 147 Fed. (2d) 602.

Ordinarily contributions by stockholders to their corporations are regarded as capital contributions that increase the cost basis of their stock, thus affecting the determination of gain or loss on ultimate dispositions of the stock. *Harry Sackstein*, 14 T. C. 566. Especially is this true when the capital stock of the corporation is issued for a minimum or nominal amount and the contributions which the stockholders designate as loans are in direct proportion to their shareholdings. *Edward G. Janeway, supra.*

When the organizers of a new enterprise arbitrarily designate as loans the major portion of the funds they lay out in order to get the business established and under way, a strong inference arises that the entire amount paid in is a contribution to the corporation's capital and is placed at risk in the business. *Cohen* v. *Commissioner*, 148 Fed. (2d) 336; *Joseph B. Thomas*, 2 T. C. 193. The formal characterization as loans on the part of the controlling stockholders may be a relevant factor [1] but it should not be permitted to obscure the true substance of the transaction. *Sam Schnitzer*, 13 T. C. 43, 60.

Footnote one states:

The determinative intent described in *Wilshire & Western Sandwiches, Inc.*, 175 Fed. (2d) 718, must necessarily be the objective intent disclosed by all the pertinent factors in the case and not the formal manifestation of intent declared by the taxpayer. Cf. *O'Neill* v. *Commissioner*, 170 Fed. (2d) 596, certiorari denied, 336 U. S. 937.

The opinion also calls attention to the question of inadequate capitalization being a situation which the Supreme Court stated was not before it in *Kelley Co.* v. *Commissioner*, 326 U. S. 521, 526;

As material amounts of capital were invested in stock, we need not consider the effect of extreme situations such as nominal stock investments and an obviously excessive debt structure.

and then points out that

When at a later date this Court was confronted with the above situation, we held that the capital there paid in must be treated as stock rather than indebtedness. *Swoby Corporation*, 9 T. C. 887.

Petitioner states that in the *Dobkin* case "the petitioners there made their loans at the inception of the corporation which loans remained constant and unchanged up to the time of liquidation of the corporation." Petitioner and his associates understood at the inception of Est Company that they would advance the necessary funds for the company to acquire the property sought and on which to operate. There were instances when the equity of the property was purchased under contract so that the first advances did not cover the purchase price of the property. The record does not reveal the purchase price, the value of the property, the amount of the mortgages on the property, or for what purpose the subsequent advances were made to Est Company. As far as we can tell, such advances might have been made in pursuance of a purchase contract, and we are unable to con-

clude that petitioner has established that he became a creditor of Est Company rather than an investor.

He also contends that in *Edward G. Janeway*, 2 T. C. 197, affd. (C. A. 2) 147 F. 2d 602, referred to in the above quotation, the Court had under consideration an isolated transaction of the taxpayer while petitioner's activities were "extensive, varied, continuous and regular" for he had "made numerous loans to the Est Realty Corporation over an extended period of time commencing with November 30, 1930, and terminating on November 30, 1945." As we have pointed out, petitioner has failed to show the purpose for which the advances were made, except that on the formation of a corporation it was undercapitalized, and the stockholders, under their agreement, immediately after formation of the company, were to advance the necessary funds for the acquisition of the property selected for the corporation to hold, and for its operation.

We are not impressed with petitioner's contention that his activities were "extensive, varied, continuous and regular" with respect to making "loans" to corporations. Organizing corporations for the purpose of holding properties over a period of years may be "extensive," "continuous," and "regular" as to time and for investments. The record does not reveal the number of corporations that might have been in existence during any one year, but it is clear that there were many liquidations of corporations that had been organized and reinvestments of funds in new corporations. It was never the intention of petitioner and his associates to pay off the mortgages on the properties acquired—"The mortgages were there when they bought them and they were there when they sold them except that they might have been reduced by amortization payments by Est." The mortgages were usually two to five years of duration and the respective investments were seldom longer. Consequently, there was an "extensive," "continued," and "regular" investment and reinvestment in titleholding corporations, although the type of investment was not "varied."

Furthermore, except for petitioner's financial interest in the respective corporations organized, there was no activity on his part with respect to the actual operations of the properties held. His activities were primarily with his accounting practice.

After carefully considering all the facts before us, we reach the conclusion that the advances petitioner made to the Est Realty Corporation were contributions of capital, and sustain respondent on this issue. For cases in which the facts were otherwise, see *Vincent C. Campbell, supra;* and *Weldon D. Smith*, 17 T. C. 135.

On the other issue, petitioner contends that the giving of his note and thus becoming primarily liable for his part of the Dune Realty

Corporation's mortgage which he, with his associates, had personally guaranteed, was a "constructive payment" of the corporate mortgage since the property of the company was released from the lien, although he expressed his doubts on the question.

As petitioner was on the cash receipts and disbursements basis and paid out nothing on his liability, he is not entitled in the taxable year 1945 to the deduction of $525, his share of the assumed liability. *Helvering* v. *Price*, 309 U. S. 409; *Eckert* v. *Burnet*, 283 U. S. 140.

Respondent did not err in disallowing the deduction.

*Decision will be entered under Rule 50.*