OPINION. TurneR, Judge: We have in issue two claimed deductions as bad debts under section 23 (k) (1) of the Internal Revenue Code of 1939,[2] one being for the $11,000 paid in or advanced to Romay on or about August 27, 1946, as above set forth, and the other for $53,273.63, in the aggregate, covering the advances made to Romay by petitioner under his Guaranty of Completion agreement with the Bank of America. Deduction of the $11,000 item was not claimed by petitioner in his return nor in his original petition, but was claimed for the first time in his amended petition. It is the position of the respondent that the amounts in question were part of the cost to petitioner of his Romay stock, but, in the alternative, if they are held to be debts, they were nonbusiness debts under section 23 (k) (4),[3] and they did not become worthless in 1948, the taxable year herein. The evidence shows, we think, and we have found as a fact, that the $11,000 was paid in to Romay as capital and that its payment did not give rise to a debt. It is true that it was evidenced by a writing in the form of an interest-bearing promissory note and in numerous of the agreements to which BAC Corporation was a party it was referred to as a loan. Even so, however, the surrounding facts and circumstances have convinced us that all parties considered it as effecting a capital expansion of Romay, and not as a loan. Furthermore, when the loan contract with the Bank of America was worked out some two or three days later, both Romay and petitioner represented that Romay had a paid-in capital of $25,000, which could be true only if the said $11,000 be included along with the $14,000 originally paid in for stock. It is clear that the Bank of America, in making the loan to Romay, did so on the basis of that representation. Such being the case, the petitioner’s claim for the deduction of the $11,000 as a bad debt is denied. Watson v. Commissioner, 124 F. 2d 437, affirming 42 B. T. A. 52. Advisedly, it would appear, petitioner, for reasons best known to himself, has specifically refrained from making any claim for the deduction of any loss of his capital investment in Romay. Although we have reached our conclusion along a line different from that argued by petitioner, we have concluded with respect to the $53,273.65 in advances made to Romay by petitioner under his Guaranty of Completion agreement with the Bank of America, that a debtor-creditor relationship did arise, that the debt or debts were not nonbusiness debts within the meaning of section 23 (k) (4), and that they did become worthless in the taxable year. The petitioner’s argument is that he was, and had been, in the motion picture business generally for years and that this particular venture was a part and parcel in the conduct of that business. That argument is not, in our opinion, supported by the evidence. It is true that he had engaged in various activities in the motion picture field both on his own account and as a salaried officer or employee of motion picture producing concerns, but, so far as appears, he had never before indulged in the business of producing or financing the production of a feature picture. Accordingly, we think that his claim must stand or fall upon his participation in his individual capacity in the venture which had to do with and resulted in the production of the Photoplay. In contemplation of law, a corporation is an entity separate and apart from its stockholders, and where an individual or group of individuals seeks the benefits of the corporate form or method for the ownership and conduct of a business, he or they may not ignore the presence or existence of the corporation, in order to avoid the disadvantages. In short, it is a free choice and except for instances when the statute may provide otherwise the advantages and disadvantages are to be taken as they come. Thus, in cases involving questions such as we have here the business of valid and subsisting corporations is not to be regarded as that of the stockholders where it is to their advantage to so regard it in order to obtain an ordinary loss deduction, as against the limited capital loss deduction, as where the corporation has been organized with nominal dr inadequate capital so as to permit the capital reasonably required to be dribbled in as needed and then under the guise of paid-in capital or loans, as the resulting advantages may suggest, or where a controlling stockholder expends his own funds in the conduct of the corporation’s, not his, business, and then seeks to classify the liability of the corporation to him for such advances as business rather than nonbusiness debts. See, for such cases, Alfred R. Bachrach, 18 T. C. 479, and A. Kingsley Ferguson, 16 T. C. 1248. A very noticeable aspect of such cases usually is the absence of an arm’s-length relationship between the corporation and the stockholder. Such, however, is not this case, since the course of action taken and the pattern followed were not selected and determined by the petitioner alone but by and in agreement with BAC Corporation and the Bank of America, which were outside or third party interests. It is true that petitioner had never, so far as the record shows, been engaged in the business of financing corporations through personal advances or loans, as in Vincent C. Campbell, 11 T. C. 510, and if such prior activity were essential to his case here, he would lose on the facts. On the other hand, this is not a nominal or inadequate paid-in capital case such as Alfred R. Bachrach, supra. Both BAC Corporation and the Bank of America were engaged in the business of credit financing and by the very nature of such a business they would as a matter of course be conscious of and sensitive to the adequacy or inadequacy of the paid-in capital of a prospective corporate borrower. In the instant case, however, they committed themselves to substantial credit financing of Romay on the basis of a paid-in capital of $25,000, and did not suggest or require further payments of paid-in or so-called risk capital after the amount thereof had been increased by petitioner from $14,000 to $25,000. They were not willing, however, to let matters rest thereafter solely in the hands of Romay or with petitioner in his capacity as controlling stockholder and president of Romay, but required certain guaranties, commitments, and agreements of participation from him individually. In other words, the activities required were not matters left to petitioner’s personal wishes or judgment and discretion as the controlling stockholder and dominant officer of Romay, but were matters in respect of which he was personally obligated under his individual contracts with the two lending institutions, and when taken as a whole these activities, which included further credit financing of Romay, if the occasion therefor arose, were in our opinion such as to make of them the conduct of a business by petitioner within the meaning of the statute and to make of the advances to Romay in the course thereof business and not nonbusiness debts under section 23 (k). Such being the facts and circumstances, we do not have here a case such as Alfred R. Bachrach, supra; A. Kingsley Ferguson, supra; Jan G. J. Boissevain, 17 T. C. 325, or other cases wherein it was held that the indebtedness of the closely held corporation to its stockholders was not to the stockholders a business debt but a nonbusiness debt under section 23 (k) (4), for the reason that the business being carried on and in the course of which the advances were made was that of the corporation and not that of the stockholders. We accordingly conclude and hold that the indebtedness of Romay to petitioner for the advances made by him under his Guaranty of Completion agreement were business debts within the meaning of the statute, and having found on the evidence that they did become worthless in the taxable year, the determination of the respondent with respect thereto is rejected. Reviewed by the Court. Decision will be entered under Bule 50. SEC. 23. DEDUCTIONS PROM GROSS INCOME. In computing net income there shall be allowed as deductions : ******* (k) Bad Debts.— (1) General bulb. — Debts which become worthless within,the taxable year; or (in tlie discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the amount charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. (4) Non-business debts. — In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term “non-business debt” means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.