Two-L Realty Co., Inc. v. Commissioner.Two-L Realty Co. v. CommissionerDocket No. 50962.United States Tax CourtT.C. Memo 1955-297; 1955 Tax Ct. Memo LEXIS 42; 14 T.C.M. (CCH) 1147; T.C.M. (RIA) 55297; October 31, 1955Samuel L. Siegel, Esq., 1270 Sixth Avenue, New York, N. Y., for the petitioner. Emil Sebetic, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income tax as follows: Taxable Year EndedDeficiencyMarch 31, 1948$1,071.36March 31, 19493,017.05$4,088.41The only issues for decision are: 1. Whether amounts of $4,000 and $13,200 paid by the petitioner to its stockholders in 1948 and 1949, respectively, were deductible as interest on loans under section 23(b) of the Internal Revenue Code of 1939. 2. Whether insurance premiums covering a period of more than one year and paid in 1948 were deductible in full in that year or must be prorated over the life of the policies. *43 Findings of Fact The petitioner is a corporation organized in 1923 under the laws of the State of New York to engage in the business of operating real estate and maintains its principal office in New York, New York. It keeps its books and records and files its tax returns on the accrual basis. Its corporation income tax returns for the fiscal years ended March 31, 1948, and March 31, 1949, were filed with the collector of internal revenue for the third district of New York. On April 20, 1923, the capital stock of petitioner, consisting of ten shares of common stock having a par value of $100 per share, was issued equally to Morris Levy and Jacob Levy for the sum of $1,000. During March of 1924, five of these shares were sold by Morris and Jacob to Phillip Brenner and Louis Brenner for $18,000. All of the shares were transferred on March 6, 1924, to a voting trust for the equal benefit of the four shareholders who were also the trustees and whose actions were governed by a majority vote. The original term of the trust was ten years but it was continued by mutual consent. The petitioner completed the construction of a building in 1925 at an approximate cost of $289,000 on land*44 which cost an additional $50,000. The construction was financed in part by money borrowed from the Greenwich Savings Bank on the security of a mortgage on the petitioner's property. The outstanding balances of the loan as of March 31, 1926, and March 31, 1932, were $175,000 and $159,000, respectively. The bank agreed to defer the amortization of the loan from 1931 to 1938 when petitioner was unable to make timely payment of principal, interest, and taxes. Under a subsequent arrangement entered into with the bank on or about January 10, 1935, the petitioner agreed to make monthly payments of $1,300 to the bank which were applied to the arrears and to the accruals of taxes and interest. The petitioner regularly accrued as deductions for income tax purposes for its fiscal years ended March 31, 1932, through March 31, 1936, the interest on the bank loan according to the original loan agreement without reference to and notwithstanding the moratorium agreement which postponed actual payment to later years. Morris and Jacob Levy and Phillip and Louis Brenner paid various sums of money at various times to the petitioner which payments were designated on the books of the corporation as*45 loans. The amounts so paid, the amounts repaid by the petitioner, and the outstanding balances as of the close of the fiscal years ended March 31, 1924, through March 31, 1949, were as follows: PhillipMorris andand LouisPaymentsPaymentsJacob LevyBrennerto Morristo PhillipYeardesignateddesignatedand Jacoband LouisEndedloansloansLevyBrenner3-31-24$14,120.88$12,500.00$ 1,682.21$ 03-31-2531,237.4829,750.001,487.4803-31-266,600.006,600.00003-31-272,061.332,000.00003-31-285,000.005,000.0032,500.0032,500.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,000.00003-31-300003,000.003-31-3100003-31-3200003-31-3301,400.0001,400.003-31-34to00003-31-383-31-39004,000.004,000.003-31-40003,000.003,000.003-31-41003,200.003,200.003-31-42003,600.003,600.003-31-43004,200.004,200.003-31-44004,600.004,600.003-31-4500750.00750.003-31-46to00003-31-49OutstandingOutstandingBalanceBalance atat CloseClose ofCombinedof Year-Year-PhillipOutstandingYearMorris andand LouisBalance atEndedJacob LevyBrennerClose of Year3-31-24$12,438.67$12,500.00$ 24,938.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,188.6742,250.0084,438.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,788.6748,850.0097,638.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,850.0050,850.00101,700.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,350.0023,350.0046,700.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,350.0026,350.0049,700.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,350.0023,350.0046,700.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,350.0023,350.0046,700.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,350.0023,350.0046,700.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,350.0023,350.0046,700.003-31-34to23,350.0023,350.0046,700.003-31-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,350.0019,350.0038,700.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,350.0016,350.0032,700.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,150.0013,150.0026,300.003-31-429,550.009,550.0019,100.003-31-435,350.005,350.0010,700.003-31-44750.00750.001,500.003-31-450003-31-46to0003-31-49*46 The designated loans to the petitioner by its four stockholders were not evidenced by any certificate of indebtedness, note, or other written instrument; they had no definite date of maturity; no arrangement for interest was made at the time the payments were made, and no security was given to insure repayment. On January 15, 1927, petitioner's board of directors at a special meeting took cognizance of the corporation's outstanding indebtedness to the Chatham and Phenix National Bank and Trust Company in the amount of $29,000 on notes discounted at the bank, to Louis and Phillip Brenner in the amount of $50,850, and to Morris and Jacob Levy in the same amount. A resolution was adopted directing that the corporation's obligations to the above-named bank be first amortized out of current receipts before any funds were applied to amortize the indebtedness to the stockholders, and that interest on the stockholders' loans at the rate of six per cent per annum be accrued on the books for the fiscal year ended March 31, 1927, and for each year thereafter until the obligation to the stockholders was fully paid. Payment of the interest was not to be made until after the obligations to the*47 bank and to the stockholders had been paid off. The petitioner claimed $14,361.51 interest on the stockholders' loans as a deduction on its Federal income tax return for its fiscal year ended March 31, 1927. In 1928 the petitioner received a letter from the then collector of internal revenue informing it that its income tax return for the fiscal year 1927 had been examined and was considered to be correct as submitted, but that if subsequent information was received which would materially change the amount reported, the Bureau of Internal Revenue would be obligated to redetermine the petitioner's tax liability. Interest on the stockholders' designated loans was accrued on petitioner's books until March 31, 1932, at which time accrued interest totaled $38,479.72. The interest accrued in each year was taken as a deduction for Federal income tax purposes up to and including the fiscal year ended March 31, 1932. Because of inability to meet mortgage and interest obligations, no interest was accrued on the loans from April 1, 1932, to July 1947, and the petitioner did not claim deductions for Federal income purposes for that period. By July 1947 arrears in the bank loans had been paid*48 up and the stockholders' advances had been repaid. During that month interest in the amount of $26,625 on the outstanding balances of the designated loans between April 1, 1932, and September 30, 1944, was entered on petitioner's books and records by a journal entry charging reserve for interest on stockholders' loans, and crediting each of the stockholders with the sum of 6,6,656.25. The stockholders hoped that future earnings of the corporation would permit the payment of the interest accrued. The petitioner's net profits and losses for the fiscal years ended March 31, 1927, through March 31, 1949, were as follows: Fiscal YearEndedNet ProfitNet Loss3-31-27$ 5,165.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,306.003-31-297,660.003-31-306,075.003-31-313,096.003-31-32$1,313.003-31-333,384.003-31-345,576.003-31-354,650.003-31-363,165.003-31-371,187.003-31-382,713.003-31-39774.003-31-40265.003-31-41770.003-31-422,782.003-31-436,358.003-31-446,923.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,783.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,079.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,064.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,445.003-31-495,112.00From the time of the organization of the petitioner on April 9, 1923, the*49 following sums have actually been paid to the stockholders, designated as follows: Repayment ofInterest toInterest toFiscal Yearsdesignated loans3-31-329-30-44Dividends3-31-23to$ 3,169.690003-31-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,000.000003-31-29to4,400.000003-31-383-31-398,000.000003-31-406,000.000003-31-416,400.000003-31-427,200.000003-31-438,400.000003-31-449,200.000003-31-451,500.00 *$ 4,500.000$ 4,000.003-31-46010,400.0004,000.003-31-47014,779.7204,000.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,800.00 *$ 4,000.004,000.003-31-490013,200.004,000.00Totals$119,269.69$38,479.72$17,200.00$16,000.00 *The Commissioner disallowed the interest deductions claimed by the petitioner for its fiscal years 1948 and 1949 in the amounts of $4,000 and $13,200, respectively, on the ground that the payments did not constitute interest within the meaning of the Internal Revenue Code. The advances by the stockholders to the corporation were in reality capital contributions to it and were not loans upon which interest was properly*50 paid or accrued by the corporation. The petitioner's accountant followed the practice of deducting insurance premiums in full and did not prorate the cost over the term of the policy. The Commissioner allowed only part of a deduction claimed for insurance premiums in 1948 and increased the deduction allowable for 1949 on the ground that proration of prepaid insurance premiums was required. Opinion KERN, Judge: Section 23(b) of the Internal Revenue Code of 1939 permits a deduction for all interest paid or accrued within the taxable year on indebtedness. The burden is on the taxpayer to show that there is an indebtedness. Baltimore & Ohio Railroad Co., 29 B.T.A. 368, affd. (C.A. 4, 1935) 78 Fed. (2d) 460. The petitioner herein has failed to carry that burden. In cases involving advances by stockholders to their corporation, all of the facts and circumstances must be considered in order to determine if the relationship of debtor and creditor has been created or if the advances are capital contributions, and no one factor is controlling. John Kelley Co., 1 T.C. 457, affd. (1946) 326 U.S. 521. The substance of the transaction*51 will govern. 1432 Broadway Corporation, 4 T.C. 1158, affd. per curiam (C.A. 2, 1947) 160 Fed. (2d) 885; Gooding Amusement Co., (1954) 23 T.C. 408. The petitioner was organized in 1923 with a capital of $1,000. By March 31, 1926, it had acquired land and a building at a combined approximate cost of $339,000. On that date it was indebted to the Greenwich Savings Bank for $175,000 and, purportedly, to its stockholders for $97,638.67. The record does not reveal the source of the additional $67,000 required to finance the acquisition of the realty, some part of which might have been borrowed from the Chatham and Phenix National Bank, but it is clear that the petitioner had a minimum debt to capital ratio of 272 to 1 and that this ratio was probably closer to 339 to 1. It is perfectly obvious that the petitioner's stated capital of $1,000 was utterly inadequate to permit it to engage in the construction and operation of the real property in question. The advances by Morris and Jacob Levy, considered as one group of stockholders, and by Phillip and Louis Brenner, as a second group, were always in direct proportion to their stock holdings and so were*52 the repayments to them by the corporation. The designated loans had no definite date of maturity, were unsecured and subordinated to other creditors, and the payment of interest was dependent upon the petitioner's earnings. There was, in fact, no understanding with respect to the payment of interest at the time the advances were made, nor was any evidence of indebtedness issued. After considering all of the circumstances, we hold that the payments by the stockholders to the petitioner were capital contributions which did not create any indebtedness and that respondent's disallowance of the interest deductions claimed for 1948 and 1949 is sustained. See Isidor Dobkin, 15 T.C. 31, affd. per curiam (C.A. 2, 1951) 192 Fed. (2d) 392; Hilbert L. Bair, 16 T.C. 90, affd. (C.A. 2, 1952) 199 Fed. (2d) 589; Alfred R. Bachrach, 18 T.C. 479, affd. per curiam (C.A. 2, 1953) 205 Fed. (2d) 151; Swoby Corporation, (1947) 9 T.C. 887; cf. R. E. Nelson, (1952) 19 T.C. 575. The adjustments made by the respondent in the amounts of the deductions claimed by the petitioner in 1948 and 1949 for insurance*53 premiums are sustained. The premiums must be prorated over the life of the policies. Higginbotham-Bailey-Logan Co., 8 B.T.A. 566 (1927); cf. Commissioner v. Boylston Market Ass'n, (C.A. 1, 1942) 131 Fed. (2d) 966; G.C.M. 23587, 1943 C.B. 213. Decision will be entered for the respondent. Footnotes*. Final payment.↩