**ROBINETTE v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 9473.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 8, 1943.

Clark J. Milliron, of Los Angeles, Cal., and T. G. Thompson, of Cleveland, Ohio (T. G. Thompson, of Cleveland, Ohio, on the brief), for petitioner.

Irving Axelrod, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Samuel H. Levy, and Irving Axelrod, all of Washington, D. C., on the brief), for respondent.

Before HICKS, ALLEN, and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

Petition by Lenore S. Robinette, a transferee of the transferee of the assets of the taxpayer, Charles C. Cohn, deceased. It is to review a decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing against petitioner a deficiency in income tax for 1918 due from the original transferor, Cohn, in the sum of $27,914.38, with interest.

The facts as stipulated and as found by the Board are briefly as follows:

Charles C. Cohn, a citizen of the United States, resided in the Philippine Islands from 1903 until 1919. He practiced law in Manila and his income as an attorney was derived from legal services performed in the Islands. He was then a married man and had a minor child.

On February 20, 1919, the taxpayer filed with the Collector of Internal Revenue for the Philippine Islands at Manila, a return of his income from all sources for 1918, and in June of that year he paid in pesos the tax shown to be due thereon in an amount equivalent to $1,667.06. In September 1920 he paid in pesos an additional assessment for 1918 in an amount equivalent to $1,635.63.

He filed no tax return for 1919 except as above stated.

In July 1919 the taxpayer returned to the United States and was a resident of San Francisco until his death in 1931. In 1919 he changed his name to Charles C. Cole and the Collector at Baltimore was notified of this change on August 28, 1923.

A son, Creswell C. Cole, received from the taxpayer's estate assets worth in excess of $30,712.22. Creswell died on September 30, 1935, and his widow, petitioner here, received assets from his estate worth in excess of $30,712.22. The deficiencies which respondent assessed against petitioner were never assessed against either Charles C. Cole, Creswell C. Cole or their estates.

Other questions to one side, the taxpayer was liable for both a normal tax and a surtax upon his net income for 1918 under Sections 210 and 211(a), Rev. Act 1918, Ch. 18, 40 Stat. 1057, 1062. Every individual having the requisite income was liable for such taxes. Lawrence v. Wardell, 9

Cir., 273 F. 405, 409; Cotterman v. United States, 62 Ct.Cl. 415, 418. The Commissioner found them to be $31,207.07 and in assessing the deficiency he was given credit by virtue of Sec. 222(a) of the Act of 1918 in the sum of of $3,302.69 paid by him to the Collector at Manila. The taxpayer was not only liable for these taxes but because he had no legal residence or principal place of business in the United States (Sec. 227, Act of 1918) he was required to make return and pay them to the Collector at Baltimore.

Notwithstanding this plain provision, the petitioner contends that the taxpayer was not required to file any return for 1918 other than that filed with the Collector at Manila and that he was not required to pay any tax in addition to that paid to that Collector. Her position stems from her conception of the effect of Sec. 261 of the Act of 1918. The material portion of this section is as follows:

"Sec. 261. That in Porto Rico and the Philippine Islands the income tax shall be levied, assessed, collected, and paid in accordance with the provisions of the Revenue Act of 1916 as amended.

"Returns shall be made and taxes shall be paid under Title I of such Act in Porto Rico or the Philippine Islands, as the case may be, by (1) every individual who is a citizen or resident of Porto Rico or the Philippine Islands or derives income from sources therein * * *."

Petitioner points out that the taxpayer was a resident of the Philippine Islands in 1918; that he derived his income therein and that he made his return with the Collector at Manila as provided by Sec. 8(b) of the Revenue Act of 1916, 39 Stat. 761, and that the Collector there was the proper officer to receive his taxes as provided by Sec. 23 of the Revenue Act of 1916.

■ All this is clear enough. The taxpayer did pay the taxes levied and assessed against him in 1918 as a resident of the Philippine Islands in accordance with the provision of the Revenue Act of 1916, Sec. 23 as amended, to the effect that the administration of the law in the collection of the taxes imposed in the Islands should be by the appropriate Internal Revenue officers thereof, and that all revenue collected thereunder should accrue, intact, to the general Government thereof. And although the Act of 1916 was repealed as a general statute by the Revenue Act of 1918, it was continued in force for the assessment and collection of income taxes in Porto Rico and the Philippine Islands "except as may be otherwise provided by their respective legislatures." Sec. 1400 of the Revenue Act of 1918, 40 Stat. 1149. In other words, it was continued in force for the assessment, levy and collection of taxes against that class of taxpayers of which the taxpayer was one, to wit, residents of the Philippine Islands, and the taxes when collected were appropriated to the governmental administration of the Islands.

■ But the Revenue Act of 1918 assessed both normal and surtaxes against a larger class of taxpayers than residents of the Philippine Islands and at higher rates and for the general governmental administration of the United States within which under that Act, for tax purposes, the Philippine Islands, in a geographical sense, were not included. It assessed these taxes against "every individual." As pointed out in Lawrence v. Wardell, supra, 273 F. page 409, the comprehensiveness of the 1918 Act is as great as language can make it. Although the taxpayer was a resident of the Islands he fell directly within that class of taxpayers, to wit, all individuals, i.e., citizens of the United States wherever residing against whom the normal and surtaxes were levied and assessed as provided by Sections 210 and 211(a) of the Act of 1918, and because he had no legal residence or place of business in any collection district of the United States, he was required to make return and payment to the Collector at Baltimore. He could not make return and payment to the Collector at Manila, because, as pointed out, the Philippine Islands were not included for tax purposes within the term "United States," as they had formerly been under the Revenue Act of 1916.

■ We think that it was the clear intention of Congress by the Act of 1918 to provide separate income taxes for the United States and the Philippine Islands and this conclusion has solid support in the provision [Sec. 222(a)] of the Act, that in computing the tax to be paid by a citizen of the United States, he shall be credited with any amount of income, war profits and excess profits taxes paid by him during the taxable year to any possession of the United States. Having failed to file his return with and pay his taxes to the Collector at Baltimore, as required by the Act

of 1918, it follows that these taxes are still liable to assessment and collection unless barred by the statute of limitations of five years, found in Sec. 250(d) of the Revenue Act of 1921, Ch. 136, 42 Stat. 227, 265. But the five year period is not a bar because of another provision of the statute that in cases of a failure to file a return, the amount of tax due may be determined, assessed and collected, and a suit or proceeding for the collection thereof may be begun at any time after it becomes due.

Petitioner insists that the statute of limitations began to run on February 20, 1919, when the taxpayer filed his return with the Collector at Manila, and that this proceeding against her was therefore barred within five years thereafter, but petitioner's handicap here is that the taxpayer failed to file a "required return" with the Collector at Baltimore (Rev.Act 1921, Ch. 136, supra) and no statute of limitations protected that failure.

The question with reference to interest arises. The deficiency found to be due from the taxpayer was $27,914.38. He would have been liable for this amount with interest from the date when it became due in 1918. If he had lived and the assets had not been transferred to petitioner he would have been liable for interest only from July 1, 1939, by virtue of Sec. 813(a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1154. In November 1936 the petitioner received assets of a greater value than the deficiency. If she had paid the amount of the deficiency on July 1, 1939, as she might have done, she would not have been liable for any interest. Se did not do this. She retained the assets for her own use, which, to the extent of the deficiency, belonged both in law and equity to the Government. She was therefore chargeable with interest from July 1, 1939, just as a taxpayer would have been so charged. See Sec. 280(a) (1) of the Revenue Act of 1926, 26 U.S.C. A.Int.Rev.Acts, page 212; Buzard v. Helvering, 64 App.D.C. 268, 77 F.2d 391, 396.

Laying to one side the question of whether there is statutory authority for the decision of the Board as to interest, nevertheless we cannot upset its holding. If we proceed upon the theory that the transferee was liable for any unpaid taxes of the transferor with interest only to the extent of the amount received, the burden was upon the Commissioner to show that petitioner was liable as a transferee. See Internal Revenue Code, Sec. 1119(a), 26 U.S.C.A.Int.Rev.Code, § 1119(a). The Commissioner carried this burden by proving that petitioner had received assets as a transferee in excess of $30,712.22. He thus made out a prima facie case and the burden of going further then rested upon petitioner. The value of the excessive assets, which she admitted having, was peculiarly within her knowledge and she should have shown this value if she wished to win on the question of interest. See Commissioner v. Renyx, 2 Cir., 66 F.2d 260; Hutton v. Commissioner, 21 B.T.A. 101, 103.

The decision of the Board of Tax Appeals is affirmed.