POWERS PHOTO ENGRAVING CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27425. Promulgated September 21, 1951.

*Daniel A. Taylor, Esq.*, for the petitioner.
*Joseph F. Lawless, Esq.*, for the respondent.

394

OPINION.

RAUM, *Judge:* Section 1119 of the Internal Revenue Code places the burden of proof upon the Commissioner to show that petitioner is liable as a transferee. As our findings show, he has established that Electronic made a transfer to its sole stockholder, the petitioner, in November 1946, of assets having a value of $162,948.44; that this transfer was made after liability for the unpaid deficiencies in tax for the year 1945, in the net amount of some $98,000, had accrued; that the transfer left Electronic insolvent and with insufficient assets to pay these deficiencies; and that they have not been paid. The parties agree that Electronic is liable for the deficiencies in tax asserted against the petitioner.

The proof submitted by the respondent is sufficient to establish prima facie that the petitioner is liable in equity for the unpaid deficiencies of Electronic. In such circumstances the burden of going forward shifts to the petitioner to show that it received the transferred assets in some capacity other than as a stockholder in such manner as to be relieved of transferee liability and that it did not receive them by virtue of stock ownership. As was stated in *Mrs. J. F. Alexander*, 27 B. T. A. 1210, 1214:

Where a corporation dissolves and turns over its capital assets to a stockholder or stockholders without paying the taxes due to the Government, such stockholder receiving those assets is a transferee. * * * upon a showing that a stockholder or stockholders have received assets of a corporation and that the taxes due the Government have not been paid, the burden of going forward shifts to the petitioner to show that he received them in some capacity other than as a stockholder and that he did not receive them by virtue of his stock ownership.

See also *C. A. Hutton*, 21 B. T. A. 101, 103, affd. (C. A. 9) 59 F. 2d 66, 69; *Edward H. Garcin*, 22 B. T. A. 1027, 1036, remanded pursuant to stipulation of the parties (C. A. 4), 79 F. 2d 993; *Estate of L. E. Mc-Knight*, 8 T. C. 871, 873; *Robinette* v. *Commissioner* (C. A. 6), 139 F. 2d 285, 288; cf. *Commissioner* v. *Renyx* (C. A. 2), 66 F. 2d 260, 261. To the extent that the transferred assets were received by petitioner as stockholder, there can be no question today as to its transferee liability. *Edward T. Franklin*, 23 B. T. A. 1325; *C. J. Phillips*, 26 B. T. A. 995.[1] Cf. *Samuel Wilcox*, 16 T. C. 572. And such liability cannot be avoided merely because the deficiency in tax had not yet been asserted at the time of the distribution of the assets; it is sufficient that such liability had accrued at or prior to that time. Cf. *Hutton* v. *Commissioner* (C. A. 9), 59 F. 2d 66, 69; *Scott* v. *Commissioner* (C. A. 8), 117 F. 2d 36, 38.

At the trial the petitioner attempted to prove circumstances that would relieve it of liability as transferee. It contends that, with the exception of $30,000[2] allocated to its initial capital investment, the amount transferred to it in November 1946 was received in bona fide payment of indebtedness due to it from Electronic, and that it therefore is not liable as a transferee to that extent. We think that the Commissioner's determination of transferee liability against the petitioner must be upheld.

Petitioner has not overcome the prima facie case made out by the respondent. Its contention that it received the bulk of the November 1946 distribution as a creditor is not convincing in the light of this record, because it is far from clear that petitioner was a creditor of Electronic. It must be remembered that Electronic was petitioner's wholly owned subsidiary, and whether its advances to Electronic created a debtor-creditor relationship or constituted merely contributions to capital calls for special scrutiny. The mere fact that advances are labeled as loans is by no means determinative. Cf. *Isidor Dobkin*, 15 T. C. 31; *Sam Schnitzer*, 13 T. C. 43, affd. (C. A. 9) 183 F. 2d 70, certiorari denied 340 U. S. 911; *Erard A. Matthiessen*, 16 T. C. 781.

---

[1] In *Pierce* v. *United States*, 255 U. S. 398, 402–403, the Court said:

The law which sends a corporation into the world with the capacity to act imposes upon its assets liability for its acts. The corporation cannot disable itself from responding by distributing its property among its stockholders and leaving remediless those having valid claims. * * *

\* \* \* \* \* \* \*

\* \* \* But when a corporation divests itself of all its assets by distributing them among the stockholders, those having unsatisfied claims against it may follow the assets, although the claims were contested and unliquidated at the time when the assets were distributed.

See also *Sawyer* v. *Hoag*, 84 U. S. 610, 623.

[2] Petitioner suggests an alternative computation whereby the portion of the 1946 distribution which it concedes was allocable to capital investment and with respect to which it concedes liability as transferee is $29,147.47.

We do not have in this case any evidence of any official corporate action, either on the part of petitioner or Electronic, which undertook to establish the character of the advances as loans. The original $30,000 investment was listed on the books as capital, and the allocation of $36,577.35 in expenses paid by petitioner for the benefit of Electronic, was treated on the books as contributed surplus. The remaining amounts were recorded as loans. All of these entries, however, were made by an accountant who was allowed to treat the advances on the books of both corporations as he deemed advisable. But the uncontrolled judgment of an accountant can hardly determine the legal character of these advances. If there were any corporate action purporting to spell out the nature of the advances, no evidence to that effect was offered by petitioner in rebuttal of respondent's prima facie case.

No notes or other evidences of indebtedness were ever issued by Electronic to petitioner, and the evidence indicates that there was no agreement as to a fixed maturity date for the repayment of the advances with the right to enforce payment thereof as a debt in the event of default. Thus, what has been called "the most significant, if not the essential feature of a debtor and creditor as opposed to a stockholder relationship" was not present. See *United States* v. *South Georgia Ry. Co.* (C. A. 5), 107 F. 2d 3, 5.

If there were any corporate action or agreement indicating that the advances or some portion thereof should constitute loans, two of the petitioner's witnesses were in a position to have had knowledge thereof. The first was the accountant who testified that he participated in the promotion and organization of Electronic. When asked what plan of financing Electronic was adopted, and by whom, he replied:

The president and the engineer that was supposed to organize the company came to us, to Mr. F. T. Powers, Sr., and myself and he assured us that he would not need much money, that the original contract for the Government was only 60-odd thousand dollars and that some of it will come back before we lay out most of the money. So Mr. Powers said all right, I will invest $30,000 in that company.

When asked what the plan or understanding was as to additional advances, he stated that they had no plan because they thought $30,000 would be sufficient to finance Electronic and they did not discuss anything about further advances. He also testified that there was no talk about additional advances made in 1943 until the end of that year when he told Powers, Sr., that petitioner was advancing to Electronic far more than had been expected and that in order not to jeopardize petitioner's credit, a loan should be obtained from a bank to take care of additional financing needed. The balance sheet of

Electronic as of December 31, 1943, when petitioner's advances to Electronic amounted to approximately $265,000, indicates that its assets amounted to only $168,175.77. The accountant also testified as follows:

Q. Was there any understanding at that time about loans or advances from Powers Photo Engraving to Powers Electronic and Communications?

A. There was no talk about advances until he [Powers, Sr.] found out that we want to go to the bank.

Q. Then what was said?

A. Then he said, "Close up. We made a bad investment, lost so much money, get out."

Q. Did he get out?

A. His son, the president, did not want to go out. He thought he could go until the first year, it was only experimental, if he will continue to help him, he may recover the loss.

Q. Was there anything said about repayment of the advances?

A. We always kept on telling him that any advance that we took would be repaid to him with interest.

The petitioner places strong reliance on this last statement as indicating an understanding or agreement that the advances would be repaid with interest and constituted loans. But we are not concerned with what the accountant told Powers, Sr., about the advances. As far as we know he had no authority to assure Powers, Sr., who apparently dominated the Powers enterprises, that the advances would be repaid with interest. Of much greater significance is what advice the accountant had, if any, from either or both corporations which prompted him to treat the advances as loans, and the record is silent on this question. While it is not too clear who was included in the pronoun "We" in the foregoing testimony, it may be assumed that the accountant was referring to Powers, Jr. The latter, the president of both petitioner and Electronic, testified that he participated in the negotiations which led up to the acquisition of war work, the organization of Electronic, and the financing of Electronic, that his father was the active manager of petitioner, and that he participated in the conversations between his father and the accountant after the end of 1943 in regard to continuing operations and the financing of further operations of Electronic. He also testified that his understanding of the amount invested by petitioner in Electronic was $30,000, and that he did not know that the books of petitioner showed that it had contributed $36,577.35 to the surplus of Electronic. However, although he was active in the affairs of Electronic and obviously would be aware of any corporate action, agreement or discussions, if any, which would throw light on the nature of the advances, his testimony did not even suggest the existence of any such corporate authority for characterizing the advances as loans.

He merely stated that the manner in which financial matters were treated on the books was left to the accountant.

We do not mean to suggest, however, that even if the book entries had been made pursuant to appropriate corporate action they would be determinative of this controversy. But the fact that no such action was back of these entries tends to weaken the significance they might otherwise have. Book entries are not conclusive, and from the evidence presented a strong inference arises that the entire amount of the advances made by petitioner to Electronic constituted a contribution to the latter's capital and was placed at the risk of the business. Cf. *Cohen* v. *Commissioner* (C. A. 2), 148 F. 2d 336;[3] *Joseph B. Thomas*, 2 T. C. 193; *Edward G. Janeway*, 2 T. C. 197, affd. (C. A. 2) 147 F. 2d 602; *Sam Schnitzer*, 13 T. C. 43, affd. (C. A. 9) 183 F. 2d 70, certiorari denied 340 U. S. 911; *Isidor Dobkin*, 15 T. C. 31; *Erard A. Matthiessen*, 16 T. C. 781. Although there was originally an intention to have petitioner invest in Electronic only to the extent of $30,000, which was then thought sufficient to finance its operations, subsequent events changed the picture. Instead of receiving one $60,000 Government contract, as originally anticipated, it received contracts from the Navy Department in excess of $1,600,000. Obviously, it needed funds far in excess of $30,000 and the petitioner attempted to furnish such funds until its accountant advised it that the amount of advances made was impairing its credit standing. There is nothing to indicate that there was any "promise" to repay these amounts and the parent was apparently financing the subsidiary's operations without any regard for time of repayment or collectibility.[4] We think that the

---

[3] In the *Cohen* case the Court of Appeals, in affirming this Court's holding that no part of $15,000 paid to a corporation was a loan, and that the entire amount was a capital contribution, said (p. 337) :

> But as we suggested in *Golden Eagle Farm Products, Inc.* v. *Approved Dehydrating Co.*, 2 Cir., 147 F. (2d) 359, footnote 1, if the uncontradicted witness rule applies at all when there is no jury, it must yield when there are facts which even indirectly may give rise to inferences contradicting the witness. In the case at bar such inferences may be drawn from undisputed facts ; no notes or other evidences of indebtedness were given to the petitioners ; no action was taken by the board of directors to assume liability on behalf of the corporation with respect to loans from the petitioners or to confirm any arrangement by the corporate officers obligating the corporation for such a loan ; nor were any entries covering the transaction made on the books of the corporation until some time after July 31, 1940, which was shortly before dissolution of the corporation. While the informality of handling the transaction might not seem to us a fatally suspicious circumstance were we free to draw inferences from the evidence independently, we cannot say that the Tax Court's conclusion is without substantial support. See *Janeway* v. *Commissioner*, 2 Cir., 147 F. 2d 602.

[4] In *Wilshire & Western Sandwiches, Inc.* v. *Commissioner* (C. A. 9), 175 F. 2d 718, relied upon by petitioner, promissory notes, maturing in 2 years with interest at 6 per cent and payable quarterly, were issued to each of the stockholders for the loans which they made to the corporation. The court said that in the facts presented it found (p. 720) "all the elements of a debtor and creditor relationship, viz., meeting of the minds as to the intent of the nature of the advance ; transfer of the consideration and a promise to pay evidenced by negotiable promissory notes presenting an unconditional and legally enforceable obligation for the payment of money." Among other things, the court also said (p. 721) :

> It is not suggested that the sole shareholder of a corporation cannot become its creditor. See *Maloney* v. *Spencer*, 9 Cir., 172 F. 2d 638. The effect of a lending and

amounts involved were placed at the risk of the business and did not constitute loans. The arbitrary designation of these advances as loans, by the accountant for both corporations, is not convincing evidence that they were in fact loans. The petitioner has not overcome the prima facie showing of transferee liability made by the respondent. Cf. *Scott* v. *Commissioner* (C. A. 8), 117 F. 2d 36.

Respondent argues that he is entitled to prevail even if the relationship between the subsidiary and the parent be deemed to be that of debtor and creditor. Cf. *Scott* v. *Commissioner, supra*, p. 39. The contention is persuasive. Petitioner was the sole stockholder of Electronic, and its liability as transferee is at law or in equity. If the 1946 distribution of nearly all of Electronic's assets to petitioner had taken the form of a liquidating dividend, and if petitioner had used the funds to pay debts of the subsidiary to a third party, it would nevertheless be liable as a transferee unless such debts were of a priority character. Such is the clear import of *Estate of L. E. McKnight*, 8 T. C. 871, 873. Cf. *Hutton* v. *Commissioner* (C. A. 9), 59 F. 2d 66, 69; *Margaret Wilson Baker*, 30 B. T. A. 188, 193, affd. (C. A. 3), 81 F. 2d 741. Surely, petitioner should not be in any better position in equity by paying an unsecured debt to itself, or by causing the distribution to take the form of payment of an unsecured debt to itself in the first instance. However, in view of our conclusion that petitioner has not overcome respondent's prima facie case, it is unnecessary to give further consideration to this point.

*Decision will be entered under Rule 50.*

---

investing transaction giving creditors, as stockholders, proprietary interest in proportion to their loans, subjects the transaction to close scrutiny, but does not, as a matter of law, require the transaction to be treated as a·stock investment, regardless of intent.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"It is often said that essential difference between a creditor and a stockholder is that the latter intends to make an investment and take the risks of the venture, while the former seeks a definite obligation, payable in any event." *Commissioner* v. *Meridian & Thirteenth Realty Co.*, 7 Cir., 132 F. 2d 182, 186.