Robert L. Osborne v. Commissioner.
Osborne v. Commissioner
Docket No. 40735.
United States Tax Court
T.C. Memo 1954-27; 1954 Tax Ct. Memo LEXIS 228; 13 T.C.M. (CCH) 428; T.C.M. (RIA) 54133; April 30, 1954, Filed *228 1. Held, that interest deductions claimed by the Osborne Engineering Company on its corporate income tax returns for the fiscal years ended October 31, 1947, and October 31, 1948, are not allowable because alleged loans by petitioner, on which such interest deductions were claimed, were, in fact, his capital investment in the corporation. 2. Held, further, petitioner is liable for any income tax deficiency assessed against the corporation, since, upon its dissolution, he received all of its assets as its sole stockholder, and the transfer thereof left the corporation insolvent. L. W. Wrixon, Esq., 403 Merchants Exchange Building, San Francisco, Calif., for the petitioner. Edward H. Boyle, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding *229 involves a deficiency in income tax for the taxable year ending October 31, 1948, in the amount of $3,630.21 determined against the Osborne Engineering Company and assessed against petitioner as transferee of the assets of the company. The issues to be determined are: (1) whether deductions claimed by the corporation on its income tax returns for 1947 and 1948 for interest accrued and paid to petitioner were bona fide interest deductions under section 23(b) of the Code; and (2) if not, whether petitioner is liable as the transferee of the corporation's assets for any income tax deficiency due from it. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found, and are herein. The Osborne Engineering Company was a California corporation organized on September 11, 1946. It filed its Federal income tax returns for its fiscal years ended October 31, 1947, and October 31, 1948, on Forms 1120 with the collector of internal revenue for the first district of California. On February 28, 1946, petitioner and one Butler J. Osborne, who were not related, formed a partnership under the name of Osborne Engineering Company for the purpose of carrying on the business *230 of buying and selling steel, steel fabrication, and construction work. Petitioner contributed all of the partnership's capital. The partnership agreement provided that the petitioner's contribution to its capital should be repaid out of profits before either partner was entitled to share therein. Butler J. Osborne drew a salary of $500 per month; petitioner drew nothing. The partnership continued in business until November 1946. On September 11, 1946, the Osborne Engineering Company (hereinafter referred to as the corporation) was incorporated under the laws of California. Petitioner was president and Butler J. Osborne vice-president. On November 1, 1946, the assets of the engineering partnership were transferred to the corporation, which began business on that date. The corporation issued its demand promissory note to the partnership in the amount of $250,759.42, with interest at 4 per cent, in payment of the partnership assets transferred to it. The corporation's note was signed by petitioner as president and by the corporation's secretary. The note was at all times held by petitioner. On January 1, 1947, the corporation gave its demand promissory note to petitioner in the *231 amount of $50,275, with interest at the rate of 2 per cent, to cover cash advances to it by petitioner since its incorporation. Butler J. Osborne resigned as an officer and director of the corporation on February 14, 1947, at which time he released and quit-claimed to petitioner any interest in the assets or profits of the partnership and the corporation, and also released any rights which he had under the partnership agreement. On March 27, 1947, the corporation issued one share of its common stock to petitioner for a $100 cash payment. No other corporate shares were issued to anyone prior or subsequent to that time. On October 31, 1947, the corporation gave its promissory note to petitioner in the amount of $18,739.99 to cover cash disbursements made by petitioner in its behalf. During its existence, the corporation also borrowed substantial sums from a bank. On its income tax returns for the fiscal years ending October 31, 1947 and 1948, the corporation deducted interest accrued and paid to petitioner in the respective amounts of $10,950.28 and $11,252.42. No deduction for interest accrued and paid was taken on its return for 1949. On September 30, 1949, the corporation was *232 dissolved, and all of its assets were transferred to petitioner by a bill of sale which recited that such transfer was made "for valuable consideration". The value of such assets was in excess of the deficiency and interest determined herein. On August 12, 1949, the corporation had deeded to petitioner all of its real property. The transfer of the partnership's assets to the corporation and petitioner's subsequent cash advances to the corporation or in its behalf were, in fact, his capital contribution to it. The corporation was insolvent after the transfer of all of its assets to petitioner. Opinion RICE, Judge: Petitioner's argument that interest accrued and paid by the corporation in 1947 and 1948 on his "loans" to it constitutes bona fide interest deductions to which it is entitled under section 23(b) of the Internal Revenue Code runs counter to a number of decisions by this Court. Hilbert L. Bair, 16 T.C. 90 (1951), affd. 199 Fed. (2d) 589 (C.A. 2, 1952); Erard A. Matthiessen, 16 T.C. 781 (1951), affd. 194 Fed. (2d) 659 (C.A. 2, 1952); Isidor Dobkin, 15 T.C. 31 (1950), affd. 192 Fed. (2d) 392 *233 (C.A. 2, 1951); Sam Schnitzer, 13 T.C. 43 (1949), affd. 183 Fed. (2d) 70 (C.A. 9, 1950), certiorari denied 340 U.S. 911 (1951); Joseph B. Thomas, 2 T.C. 193 (1943); and Edward G. Janeway, 2 T.C. 197 (1943), affd. 147 Fed. (2d) 602 (C.A. 2, 1945). The reason that the claimed deductions are not justified is the fact that petitioner's transfer of partnership property and cash advances to or in behalf of the corporation were, in reality, capital contributions to it, and not loans. The corporation here began business with no stated capital investment set up on its books. Petitioner, through the previous partnership, transferred all of that firm's assets to the corporation in exchange for its note. Not until approximately 5 months later was a single share of stock issued to anyone. Thus, at the outset of its existence, the ratio of indebtedness to equity capital was over 250,000 to zero; and even after the issuance of the one share of stock, it was more than 2,500 to one. Obviously, this is an extreme example of under-capitalization. Petitioner attempts to magnify minor factual dissimilarities in the above-cited *234 cases from the one before us as a basis for distinction. Those cases are not distinguishable from the one before us; for, in them, as in this case, the significant fact is that the major portion of money or property transferred to the corporations was intended essentially as risk capital, and not bona fide loans. We are also unimpressed with petitioner's argument to the effect that he could have achieved the same tax result, for which he here contends, by (1) receiving a salary from the corporation; or (2) by securing loans from banks, for the corporation, on his guaranty; or (3) by leasing the physical assets of the partnership to the corporation. He did not adopt any one of those three methods, and we cannot be concerned with problems which might have been presented to us had he done so. Petitioner further argues on brief that "the partnership agreement provided that the petitioner would advance the capital required to equip and place the business in operation"; that he would be repaid from profits before any distribution thereof among the partners took place; and that when the corporation was formed, it was necessary for him to make the "loans" in question to carry out the effect *235 of the partnership agreement. This record demonstrates clearly that petitioner's capital contribution to the partnership remained a capital contribution when the partnership's assets were transferred to the corporation. The same is true of subsequent cash advances. The fact that petitioner chose to make his investment in the corporation under the guise of "loans", in order to carry out the intent of the agreement between himself and Butler J. Osborne when the prior partnership was formed, does not change the fact that he made an investment of risk capital in the corporation, and not loans to it. We do not understand that petitioner seriously contests his transferee liability for any corporate income tax deficiency herein determined. He admits that the corporation was insolvent after the transfer of its assets to him in 1949. The respondent has borne his burden of proving that the transfer of those assets to petitioner was in his capacity as a stockholder; hence, petitioner is liable for the income tax deficiency here determined against the corporation. Powers Photo Engraving Co., 17 T.C. 393 (1951), remanded on other grounds 197 Fed. (2d) 704 (C.A. 2, 1952). *236 Decision will be entered for the respondent.