Burton Ginsberg, Transferee, Trustee for Stuart Ginsberg, Harry Ginsberg, Harriet Ginsberg and Beverly Ginsberg Bloom v. Commissioner.
Ginsberg v. Commissioner
Docket No. 4867-62.
United States Tax Court
T.C. Memo 1965-36; 1965 Tax Ct. Memo LEXIS 295; 24 T.C.M. (CCH) 195; T.C.M. (RIA) 65036; February 23, 1965
Arthur B. Cunningham, Suite 812, Ainsley Bldg., Miami, Fla., and Daniel L. Ginsberg, for the petitioner. Kenneth G. Anderson, for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined that petitioner is liable as transferee of the Estate of Charles J. Ginsberg in respect of 1947 income taxes of the decedent in the amount of $27,920.13, plus interest as provided by law. The tax liability *296 itself has already been adjudicated and only petitioner's liability as transferee is here involved. Findings of Fact Some of the facts have been stipulated, and, as stipulated, are incorporated herein by reference. Charles J. Ginsberg (sometimes hereinafter referred to as the decedent) died testate, a resident of Miami Beach, Florida, on September 22, 1948. Prior to his death, he filed his Federal income tax return for the year 1947 with the Collector of Internal Revenue, Jacksonville, Florida. For the year 1947, he reported a Federal income tax liability in the amount of $1,356.90. The heirs, next of kin, devisees and legatees of the decedent were the members of his immediate family, including his wife, Annette Ginsberg, and his children, whose ages in 1948 were as follows: Relation-
Age in
Name
ship
1948
Stuart Ginsberg
Son
17
Harriet Ginsberg
Daughter
14
Beverly Ginsberg
Daughter
12
Harry Ginsberg
Son
9
On December 15, 1948, letters testamentary were issued by the County Judge's Court for Dade County, Florida, appointing Sydney Ginsberg, brother of decedent, as executor of the will of decedent. Sydney Ginsberg served as executor until *297 about April 18, 1957, when he resigned and petitioner Burton Ginsberg (son of Sydney Ginsberg) and Harry Steinberg were appointed co-executors. The will provided that 80 percent of the corpus of decedent's estate be held in trust for the benefit of his children until they respectively attained the age of 25 years, and named Sydney Ginsberg and Fred G. Nagle trustees of the trust. On September 26, 1951, the Circuit Court for Dade County, Florida, determined that they were duly qualified to act as trustees and to administer the trust in accordance with the terms of decedent's will. Fred G. Nagle died on September 11, 1954. Under date of November 26, 1954, petitioner Burton Ginsberg became co-trustee of the trust. The resignation of Sydney Ginsberg as co-trustee was approved by order of the Court entered on January 23, 1957, and Burton Ginsberg then became sole trustee. The estate tax return, Form 706, for the estate of decedent was filed with the then Collector of Internal Revenue, Jacksonville, Florida, on December 5, 1949. The assets reported as comprising the estate of the decedent were valued as of the date of his death in that return. Among the assets so reported were the following: *298 Value at
date of death
1/2 interest in certain real estate
referred to herein as the
Nelson Villa property
$73,871.50
10 Shares of stock in Nash
Miami Motors, Inc., Miami,
Fla.
42,236.24
In computing the estate tax due, the estate determined that there was a net estate tax payable in the amount of $13,496.97. This amount was paid by the estate to the Internal Revenue Service on December 5, 1949. Annette Ginsberg, the decedent's widow, dissented from the will, and elected to take dower, pursuant to sections 731.11 and 733.13 of the Florida Statutes Annotated. She was assigned dower in December, 1951, in various items of property, including 3 1/3 shares of the common stock of Nash Miami Motors, Inc., and 1/3 of decedent's one-half interest in the Nelson Villa property. Nash Miami Motors, Inc. was a Florida corporation organized on February 5, 1947, to conduct a Nash automobile dealership franchise in the City of Miami, Florida. Throughout the period February 5, 1947 through December 31, 1962, the corporation continued to operate a new car dealership for Nash and American Motors automobiles. Nash Miami Motors, Inc. resulted from the incorporation of *299 the partnership, Nash Miami Motors, which had engaged in the same automobile business in Miami, Florida, since approximately November 1, 1945. Charles and Sydney Ginsberg, partners and chief stockholders in Nash Miami Motors, Inc., had been previously engaged in automobile and other profitable business operations in the Detroit, Michigan, area from approximately 1929 to 1945. Upon organization of the corporation, 20 shares of its stock were issued at $1,000 per share, or a total of $20,000. Ten shares were issued to Charles Ginsberg, 9 to Sydney Ginsberg, and 1 to Daniel Ginsberg, son of Sydney. Except for the changed stockholdings in the Charles Ginsberg family after his death, as noted herein, there were no other changes in stockholdings at any period pertinent herein. The decedent's one-half interest in the Nelson Villa property was valued at $73,871.50, as of September 22, 1948, for estate tax purposes by the appraisers for the estate, and that value was accepted by the Commissioner after the revenue agent auditing the return had consulted certain independent real estate experts. The property was located adjacent to the business premises of Nash Miami Motors, Inc. During *300 the years 1949 and 1950, an Internal Revenue agent audited the income tax returns of Nash Miami Motors, Inc. for its fiscal years ended November 30, 1947, and November 30, 1948. Such audit led to the further examination and audit of the income tax returns of the partnership, Nash Miami Motors, for its fiscal years ended May 31, 1946, and May 31, 1947, and of the individual returns of the equal partners of the partnership, Charles and Sydney Ginsberg, for their taxable years 1946 through 1948. During such audit, the Internal Revenue agent discussed with Sydney Ginsberg proposed adjustments for the years 1946 through 1948 involving the estate of decedent. By virtue of such audit and such discussion, Sydney Ginsberg was aware, prior to November 26, 1952, of pending deficiencies in income tax against the estate of decedent for the years 1946 through 1948. As a result of the audit of the estate tax return the Commissioner determined on or about April 30, 1952, that there was a deficiency in estate taxes due from the estate in the amount of $14,512.46, and interest due thereon in the amount of $2,125.78. The $14,512.46 deficiency was computed as follows: Gross deficiency
$15,515.81
Less: Credit for State Inheritance
Tax
1,003.35
Net Deficiency
$14,512.46
*301 This deficiency, with interest in the amount stated, was paid by the estate on June 12, 1952. On audit, the 10 shares of capital stock of Nash Miami Motors, Inc., part of the estate of the decedent, were determined to have had a value of $100,000 as of September 22, 1948, based upon the amount which a willing buyer would have paid to a willing seller for such stock, taking into account the net earnings of the corporation, the value of its assets, its goodwill, and the nature of the particular business involved. The estate and the Commissioner agreed to this determination. At that time, the estate was cognizant of the pending income tax investigation. No protective claim for refund of estate taxes was filed by the estate. About November 26, 1952, Sydney Ginsberg, as executor of the "Estate" of the decedent, filed a petition for partial distribution in the County Judge's Court, Dade County, Florida. Such petition provided in part as follows: COMES NOW SYDNEY GINSBERG, Executor of the Estate of Charles J. Ginsberg, deceased * * * and represents unto this Honorable Court the following: * * *
2. The Estate is now ready for distribution. * * *
4. That according to the will *302 of the deceased, the personal and real property in the hands of the Executor is to be transferred to the trustees in trust * * * according to the terms set forth in the said will. WHEREFORE, this Petitioner prays that this Honorable Court direct him to distribute the Nash Miami Motors stock over to the trustees named in the will. By order dated November 26, 1952, the County Judge's Court ordered the estate to transfer the 6 2/3 shares of the common stock of Nash Miami Motors, Inc. (remaining after assignment of dower) to the trustees named in the will of decedent. Such stock was so transferred on November 26, 1952. The total capital and surplus, per books, of Nash Miami Motors, Inc. as of November 30, 1948 through November 30, 1953, were as follows: November 30
1948
$ 94,924.79
1949
110,690.72
1950
163,277.58
1951
187,073.29
1952
233,309.96
1953
245,543.93
The earnings of Nash Miami Motors, Inc., and cash dividends to stockholders, per share, for the years ended November 30, 1948 through November 30, 1953 were as follows: Cash
Year Ended
Total
No.
Dividends,
Nov. 30
Earnings
Shares
Per Share
1948
$ 80,650.49
20
None
1949
20,459.46
20
None
1950
144,586.86
20
$1,000.00
1951
71,131.86
20
1,000.00
1952
177,160.60
20
1,000.00
1953
20,499.41
20
1,000.00
*303 As of November 30, 1952, the value per books of the net assets of Nash Miami Motors, Inc. was $233,309.96. As of that date, its cash and inventory (valued at the lower of cost or market) alone totaled $361,625.33, and all of its liabilities per books totaled $204,442.56. On March 27, 1956, the Commissioner mailed to Nash Miami Motors, Inc. a statutory notice of deficiency, determining deficiencies in income taxes and fraud penalties as follows: Taxable Year
Deficiency
Fraud Penalty
11/30/47
$17,906.07
$8,953.04
11/30/48
8,822.19
4,411.10 On or about the 14th day of June, 1956, Nash Miami Motors, Inc. filed its petition with this Court for a redetermination of such deficiencies, which case was docketed as Number 68315. After a trial on the merits, this Court issued its findings of fact and opinion on August 31, 1964, in Nash Miami Motors, Inc., T.C. Memo. 1964-230, and on November 25, 1964, entered its decision therein, finding deficiencies in income tax and additions for frand in the foregoing amounts determined in the statutory notice of deficiency. As of November 26 and 30, 1952, the fair market value of 6 2/3 shares of Nash Miami Motors, *304 Inc. stock was $60,000. An analysis of the executor's accounting from the files of the County Judge's Court, Dade County, for the estate of the decedent for the period June 30, 1951 to November 30, 1952, shows the following: Assets as of June 30, 1951
Cash - Miami Beach First National Bank
$ 2,128.50
Other assets held as of June 30, 1951, with values as established by review of
Bureau of Internal Revenue as agreed on April 30, 1952, said agreement
having been approved by County Judge's Court: Real estate - 1/2 interest in E. 1.78 feet Lot 9 and Lots 10-20, incl. of Nelson
Villa, Garden of Eden subdivision
73,871.50
Stock - 10 shares of Nash Miami Motors, Inc
100,000.00
1 share Venetian Realty Corporation
10,668.55
Account Receivable - Hyman
3,000.00
U.S. Treasury Bonds
40,223.08
Total assets as of June 30, 1951
$229,891.63
Add: Cash receipts 6/30/51-11/30/52
Proceeds from sale of U.S. Treasury Bonds
$40,488.85
Rental income and miscellaneous cash receipts
21,280.64
61,769.49
TOTAL
$291,661.12
Less: Cash disbursements 6/30/51-11/30/52
12/13/51 Portion of dower paid in cash to Annette Ginsberg
$22,509.72
6/2/52Sydney Ginsberg, Trustee - Trustee Account - cash
6,666.67
6/12/52 Estate tax deficiency
14,512.46
6/12/52 Interest on above deficiency
2,125.78
Miscellaneous cash disbursements
17,874.68
Total cash disbursements
$63,689.31
Disposition of U.S. Treasury Bonds
40,223.08
Distribution of property
12/26/51 - Dower to Annette Ginsberg
1/3 of the 1/2 interest in the Nelson Villa property
24,623.84
1/3 of 10 shares Nash Miami Motors, Inc.
33,333.33
1 share Venetian Realty Corporation
10,668.55
1/3 of Account Receivable - Hyman
1,000.00
11/26/52 - Distribution of stock to Sydney Ginsberg, Trustee, for
the four children of deceased per order of Dade County Cir-
cuit Court
66,666.67
Depreciation allowance
2,155.64
242,360.42
NET ASSETS charged to executor as of 11/30/52
$ 49,300.70
*305 As of November 30, 1952, the following assets remained in the hands of the executor of the estate of the decedent: Cash - Miami Beach First National
Bank
$ 208.68
2/3 of 1/2 interest - Nelson Villa prop-
erty
49,247.66
Account Receivable - Hyman
2,000.00
TOTAL
$51,456.34
Less: Reserve for depreciation
2,155.64
NET ASSETS ON HAND
$49,300.70
Also, as of November 30, 1952, Federal income tax liabilities of the decedent were due from the estate for the years 1946 through 1948 in at least the following amounts, plus statutory interest: Additions to tax for
fraud, Sec. 293(b),
Year
Income Tax
I.R.C. 1939
1946
$ 3,589.86
$ 1,794.93
1947
64,172.45
32,086.23
1948
15,036.81
9,348.15
On June 24, 1953, the district director of internal revenue, Jacksonville, Florida, mailed a statutory notice of deficiency to the Estate of Charles J. Ginsberg, Sydney Ginsberg, executor, in which deficiencies in income tax for the years 1946 through 1948, together with additions to tax for fraud under Section 293(b) of the Internal Revenue Code of 1939, were determined as follows: Additions to tax for
fraud, Sec. 293(b),
Year
Income Tax
I.R.C. 1939
1946
$ 4,146.93
$ 2,073.47
1947
65,227.47
32,613.74
1948
16,576.69
10,118.09
*306 The estate filed petitions with this Court, which were assigned Docket Nos. 50034 and 50657, for redetermination of such deficiencies. After a trial on the merits, this Court issued its findings of fact and opinion on May 26, 1958. Estate of Charles J. Ginsberg, et al., T.C. Memo 1958-95. Pursuant to that opinion, decisions were entered in Docket Nos. 50034 and 50657, redetermining the deficiencies involved in amounts as follows: Additions to tax for
fraud, Sec. 293(b),
Year
Income Tax
I.R.C. 1939
1946
$ 3,589.86
$ 1,794.93
1947
64,172.45
32,086.23
1948
15,036.81
9,348.15
On November 3, 1958, the estate filed a petition for review of the decision of this Court to the Court of Appeals for the Fifth Circuit. No supersedeas bond was filed, and the taxes and additions to the tax and accrued interest for the year 1947 were assessed by the Commissioner on January 2, 1959. On November 10, 1959, the Court of Appeals for the Fifth Circuit affirmed the decision of the Tax Court. 271 F. 2d 511. On December 9, 1959, a petition for rehearing was denied. No petition for a writ of certiorari to the United States Supreme Court *307 was filed. On May 13, 1959, the Commissioner filed a proof of claim in the Matter of Estate of Charles J. Ginsberg, in the County Judge's Court for Dade County, Florida, probate proceeding, Docket No. 21716, for the deficiencies assessed for the years 1946 through 1948, in amounts as follows: Interest
Additions to
Assessed
tax for fraud,
through
Sec. 293(b),
Year
Income Tax
5/14/59
I.R.C. 1939
1946
$ 3,589.86
$ 2,714.33
$ 1,794.93
1947
64,172.45
44,587.15
32,086.23
1948
15,036.81
9,565.03
9,348.15
These liabilities, plus interest accuring after the filing of the foregoing proof of claim, were discharged in part as follows: (1) The 1948 liability, which was a joint liability of Charles and Annette Ginsberg, was satisfied by a payment by Annette Ginsberg on the sale of certain real estate in 1962. (2) The executors made cash payments to the Internal Revenue Service in January 1962 aggregating $77,209, which were applied to the 1946 and 1947 liabilities. $9,383.95 of that amount was used to satisfy in full the 1946 deficiency, penalty and interest. The remaining $67,825.99, together with a $512.56 credit for overassessment *308 on fiduciary return of the Estate for its year 1960, making a total of $68,338.55, was applied against the 1947 deficiency and the Section 293(b) addition to tax for fraud (so-called fraud penalty), exclusive of interest, leaving an unpaid amount for 1947 computed as follows: Deficiency
$64,172.45
Addition to tax
32,086.23
$96,258.68
Less: Payments and credit
68,338.55
UNPAID AMOUNT
$27,920.13
The foregoing amount of $27,920.13 in respect of deficiency and addition to tax for 1947, exclusive of interest, remained unpaid as of September 27, 1962 when the notice of transferee liability was sent to the petitioner herein. The source of the cash for the foregoing payments in January 1962, and the final distribution of all remaining assets in the executor's hands are shown in the following analysis of the executor's final accounting for the period July 20, 1961 to January 30, 1962, as filed in the County Judge's Court: Cash - Miami Beach First National Bank
$ 2,292.69
Real Estate - 2/3 of 1/2 interest - Nelson Villa property
49,247.66
Total
$ 51,540.35
Reserve for depreciation
5,047.16
Total assets as of July 20, 1961
$ 46,493.19
Add: Cash receipts 7/20/61-1/30/62: Miami Herald - Proceeds from sale of 2/3 of 1/2 interest -
Nelson Villa
1/23/62
$85,935.73
1/30/62
9,600.00
Total from sale of property
$95,535.73
Rental income and miscellaneous cash receipts
1,800.00
97,335.73
TOTAL
$143,828.92
Less: Cash disbursements 7/20/61-1/30/62: 1/23/62 Internal Revenue Service
$75,000.00
1/30/62 Internal Revenue Service
2,209.94
$77,209.94
1/30/62 Internal Revenue Service - Fiduciary return pe-
riod 9/1/61-1/30/62
2,047.04
Legal fees, Court costs, miscellaneous
20,371.44
Total cash disbursements
$99,628.42
Disposition of 2/3 of 1/2 interest -
Nelson Villa property
$44,082.65
Depreciation allowance
117.85
$143,828.92
Balance as of January 30, 1962
0
*309 The executor's filed their final accounting report with the County Judge's Court for the period July 20, 1961 to January 30, 1962, and filed a petition for final discharge on February 6, 1962, with the court. In such petition, the executors stated as follows: The petition of Harry Steinberg and Burton Ginsberg respectfully shows: That they are the duly qualified and acting co-executors of the Estate of Charles J. Ginsberg, deceased; that they have faithfully administered the estate of said decedent; have paid all of the debts of said estate in full except the claim of the Internal Revenue Service of the United States Government, but that said claim has been paid to the best extent possible by paying on acount of this claim all of the net proceeds available which have arisen out of the administration of said estate and they have rendered to this Court due accounts of their administration, and that they do not seek an order of distribution of said estate due to the fact that said estate is insolvent. /s/ February 6, 1962, Harry Steinberg for Harry Steinberg and Burton Ginsberg as Co-executors On March 25, 1962, Harry Steinberg and Burton Ginsberg were discharged as co-executors *310 by the court. The estate was closed. On September 27, 1962, respondent mailed a statutory notice of liability to petitioner in which his liability, as transferee, was determined to be $27,920.13, plus interest as provided by law. Opinion RAUM, Judge: The tax liability here involved is that of the Estate of Charles J. Ginsberg in respect of the decedent's 1947 income. The existence of that liability has already been adjudicated by this Court and our decision has been affirmed. Ginsberg's Estate v. Commissioner, 271 F. 2d 511 (C.A. 5). A substantial portion of that liability has already been paid, but there remains unpaid not only $27,920.13 in respect of the basic deficiency and so-called fraud penalty but also a considerably larger amount of unpaid interest. [1] The Commissioner has determined that petitioner is liable as transferee of assets of the Estate of Charles J. Ginsberg for the foregoing $27,920.13 in respect of the decedent's 1947 income taxes, plus interest as provided by law. *311 Petitioner is a successor testamentary trustee of a trust established pursuant to the decedent's will, and the liability asserted herein is based upon the executor's transfer to that trust of 6 2/3 shares of Nash Miami Motors, Inc., on November 26, 1952. His liability is, of course, limited to the fair market value of that stock on November 26, 1952. The stautory machinery for proceeding against a transferee has been in the revenue laws for a number of years, and provisions authorizing such action may be found in Section 311 of the 1939 Code and Section 6901 of the 1954 Code. These provisions are applicable not only to transferees generally but also to any heir, legatee, devisce or distributee of an estate of a deceased person, including the trustee of a testamentary trust. United States Trust Company of New York, Trustee of the Trust under the Will of Philander K. Cady, Transferee, 16 T.C. 671, 677. 1. We are met at the outset here by petitioner's contention that the Government has failed to establish insolvency of the transferor at the time of the transfer. There are at least two complete answers to that position. In the first place, the transferor here, unlike *312 the typical case, is a decedent's estate, and the transfer herein was merely one of a series of transfers that resulted ultimately in stripping the transferor of all assets while leaving some liabilities unsatisfied. Where there is a series of transfers, it is insolvency at the conclusion of the series that is significant rather than insolvency at any particular point along the way. In Aurore B. Benoit, 25 T.C. 656, we stated that the Commissioner's burden in respect of insolvency could be met by showing (p. 663): * * * that the transfer was one of a series of distributions in complete liquidation which left it insolvent and without means to pay its tax liability. See J. Warren Leach, 21 T.C. 70, 75, Cf. Botz v. Helvering, 134 F. 2d 538, 543 (C.A. 8), affirming 45 B.T.A. 970, 976; Borall Corporation v. Commissioner, 167 F. 2d 865, 870 (C.A. 2). Although the Court of Appeals remanded the case to enter a decision for the Commissioner modified in a certain respect not germane here, it approved our views in regard to insolvency at the end of a series of distributions, stating ( Benoit v. Commissioner, 238 F. 2d 485, 492-493 *313 (C.A. 1)): * * * the petitioner urges that the distribution to her did not render River Mills insolvent. While it is true that the distribution did not render the corporation insolvent at the time it was made, she, nevertheless, is liable as a transferee if that distribution was one of a series of distributions in liquidation which resulted in ultimate insolvency. Cf. Borall Corporation v. Commissioner of Int. Rev., supra; Botz v. Helvering, 8 Cir., 1943, 134 F. 2d 538. See also May R. Kieferdorf, 1 T.C. 772, 777 ("[the] solvency of an estate must logically be viewed by comparison of all of its assets and liabilities as reflected in the final report and account"), affirmed 142 F. 2d 723 (C.A. 9), certiorari denied, 323 U.S. 733. In the present case, as in the case of any decedent's estate, every distribution is merely one of a series looking to the ultimate distribution of the entire estate. Indeed, as shown by the final accounting of the executors for the period ending January 30, 1962, they had no assets whatever as of that date. Thus, the estate was left without assets and was insolvent as a consequence of the series of *314 distributions made by the executors, one of such distributions being the transfer of the 6 2/3 shares of Nash Miami Motors, Inc., to the testamentary trust. Accordingly, if it were necessary to prove insolvency, that fact has been abundantly established in this record as of the end of the series of distributions of the decedent's estate. In the second place, even if the Government were required to establish insolvency at the time of the November 26, 1952 transfer, that burden has been carried. The executor's accounting for the period ending November 30, 1952 shows net assets on hand in the amount of $49,300.70. [2] But it fails to take into account the estate's liability for unpaid 1946-1948 taxes. True, formal deficiency notices for those years had not yet been sent, but the investigation with respect to those years had been in progress for a substantial period of time and this was fully known by the then executor and co-trustee, Sydney Ginsberg. Such liabilities for taxes, together with additions for fraud, in fact amounted to over $125,000 as of that time, exclusive of interest, and may not be ignored. Those liabilities, even though then unknown or unknown in amount, must be considered *315 in determining whether the estate was in fact insolvent or rendered insolvent by the distribution. Scott v. Commissioner, 117 F. 2d 36, 38 (C.A. 8); Coca-Cola Bottling Co. of Tucson, 37 T.C. 1006, 1013; Arlington F. Brown, 24 T.C. 256, 266; J. Warren Leach, 21 T.C. 70, 75-76; Powers Photo Engraving Co., 17 T.C. 393, 399, remanded on another ground 197 F. 2d 704 (C.A. 2). We have no doubt whatever on this record that if insolvency must be shown as of the date of the transfer it has been clearly and convincingly established here. We therefore do not consider other arguments advanced by the Government that under Florida law it was not necessary to prove insolvency at all in this case. *316 2. A second issue raised by petitioner involves the valuation of the 6 2/3 shares of Nash Miami Motors, Inc., on November 26, 1952. The record contains a great deal of material relating to this factual question. We have taken into account all of the evidence, including the underlying assets, the pattern of corporate earnings, the nature of the business, the fact that the 6 2/3 shares represented a one-third minority interest, and have found as a fact that these shares had a fair market value of $60,000 on November 26, 1952. We also took into account but gave only minor weight to the evidence that petitioner's counsel bought in those shares for $1,650 at a foreclosure sale on April 9, 1964, less than a month prior to the trial herein, in connection with his lien for attorney's fees. The circumstances surrounding that sale appear to raise more questions than they answer, and the evidence does not give us any great sense of confidence that the $1,650 figure is a sound criterion of fair market value in 1964, to say nothing of fair market value on November 26, 1952. 3. Petitioner argues also that he "is entitled equitably to recoup the amounts of estate taxes paid by the Estate of Charles *317 J. Ginsberg". The point has no merit. In the first place, even if it were sound, it would avail petitioner nothing. The total liability for unpaid tax, addition to tax for fraud, and interest is in excess of $102,000, [3] whereas a total of only $30,135.21 [4] has been paid in estate taxes. Accordingly, even if the estate taxes were to be applied in full against that liability there would still remain over $70,000 unpaid. But we have found a $60,000 value for the 6 2/3 shares of Nash Miami Motors, the transferred assets, which marks the limit of petitioner's transferee liability, and that amount is less than the amount still due even after subtracting the estate taxes. However, we do not mean to suggest that there is otherwise any substance to the claimed set-off by the way of equitable recoupment. *318 Not only are there a variety of grounds why no such set-off would be available here, cf. Rothensies v. Electric Storage Battery Co., 329 U.S. 296; Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418; Vandenberge v. Commissioner, 147 F. 2d 167, 168 (C.A. 5), affirming 3 T.C. 321; Estate of Samuel Stein, 37 T.C. 945, 956; Wiener Machinery Co., 16 T.C. 48, 54; Rev. Rul. 55-226, 1955-1 C.B. 469, but even if it were open to the estate itself to claim such set-off, it probably could not be taken advantage of by a transferee. Cf. John A. Snively, Sr., 20 T.C. 136, 151. Moreover, petitioner's defenses can rise no higher than those of the transferor itself. And in this case the transferor's liability has already been adjudicated. Accordingly, even if the transferor might successfully have raised the defense of equitable recoupment in the case in which it was a party, it did not do so. The judgment against it must therefore be regarded as a final determination as to its liability which cannot be scaled down by additional defenses subsequently raised in transferee proceedings. *319 4. Finally, co-counsel Daniel L. Ginsberg has separately raised various constitutional issues relating to this Court. They are without merit and we shall not undertake any discussion of them. Similar issues were also raised by counsel and rejected in Nash Miami Motors, Inc., T.C. Memo. 1964-230, August 31, 1964. The motions herein relating to these issues will be denied. Decision will be entered in accordance with this opinion. Footnotes
1. The unpaid assessed interest through May 14, 1959 was $44,587.15, and the Commissioner has computed interest thereafter to be $26,634.21 for the period May 14, 1959 to January 14, 1962, and $3,350.42 for the period January 25, 1962 to January 25, 1964. The sum of these three interest figures is $74,571.78.↩
2. This figures was also stipulated by the parties. Its components, similarly stipulated, appear in our findings. The principal component was 2/3 of the 1/2 interest in the Nelson Villa property at $49,247.66. The latter figure was the proportionate value of this property at the date of decedent's death. The evidence indicates that such value increased about 15 percent by November 26, 1952, the date of the distribution herein. Accordingly, even if such increase in value be added to the remaining assets, the outstanding liabilities for taxes were far in excess of any such increased amount.↩
3. The unpaid tax and addition to tax for fraud amount to $27,920.13, and as indicated in footnote 1, supra, accumulated interest is at least $74,571.78. ↩
4. This amount is composed of $13,496.97 paid with the estate tax return on December 5, 1949, and $14,512.46 together with $2,125.78 interest paid on June 12, 1952 in conection with the deficiency determined against the estate.↩