The Canton Tool Manufacturing Company v. Commissioner.
Canton Tool Mfg. Co. v. Commissioner
Docket No. 55518.
United States Tax Court
T.C. Memo 1957-161; 1957 Tax Ct. Memo LEXIS 89; 16 T.C.M. (CCH) 699; T.C.M. (RIA) 57161; August 19, 1957
Albert B. Arbaugh, Esq., Harter Bank Building, Canton, Ohio, for the petitioner. Frank W. Hardy, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $1,563.85 in the petitioner's income tax for the fiscal year ended May 31, 1951. The issues presented are the correctness of the respondent's action: (1) In determining that in the computation of its net income and its excess profits tax net income for the fiscal year ended May 31, 1951, the petitioner was not entitled to deduct as interest an amount of $3,666.68 accrued and paid by it with respect to two notes it issued to its two stockholder-officers; (2) in determining that for excess profits tax purposes the two *90 notes did not represent "borrowed capital" within the meaning of section 439(b)(1) of the Internal Revenue Code of 1939; and (3) in determining that a deduction of $485.92 representing legal fees paid in connection with the incorporation of the petitioner and expense of issuing its stock was not allowable. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner is an Ohio corporation and has its principal place of business in East Canton, Ohio. It filed its income and excess profits tax returns for the fiscal year ended May 31, 1951, with the collector at Cleveland, Ohio. The petitioner was incorporated on November 25, 1946, with an authorized capital stock of 1,000 shares without nominal or par value. It adopted and has continued to use as its fiscal year the period June 1 through May 31 of the following year. The petitioner has kept its books and filed its income and excess profits tax returns on an accrual basis. In 1942, Joseph J. Fedevich and Thomas J. Roberts with three other individuals formed a partnership which conducted business in East Canton, Ohio, under the name of Canton Tool Manufacturing Company. Each of the partners *91 was a machinist and mechanic and the firm engaged in the tool and die manufacturing business. By an undisclosed date prior to November 25, 1946, three of the partners had withdrawn from the firm and sold their interests in it to Fedevich and Roberts, who continued to conduct the business as equal partners under the firm name theretofore used. On or about December 1, 1946, the partnership had approximately 50 employees and its payroll amounted to approximately $2,000 a week. The partnership agreement under which the tool and die manufacturing business was begun in 1942 contemplated that each partner would contribute $1,000 to the firm but only two of the partners contributed as much as that amount. From the inception of business in 1942 until December 1946, the partnership was continuously borrowing money with which to operate its business. Such borrowing was necessary because of the partnership's lack of operating capital. Sometime prior to November 25, 1946, Fedevich and Roberts consulted their attorney, Warren G. Smith, and their certified public accountant, Thomas W. Edwards, III, about forming a corporation to conduct the tool and die manufacturing business then being conducted *92 by them in partnership and to acquire from the partnership certain assets necessary for the conduct of the business. The attorney and the accountant suggested the formation of a corporation with a capital stock of $25,000 with Fedevich and Roberts each subscribing for one-half of the stock, that the partnership transfer to the corporation, at their book value, the assets in question, that the corporation issue its promissory notes for $100,000 of the amount of such assets, and that the remainder of the amount be carried as an open account payable to them by the corporation. Fedevich and Roberts approved the suggestion and thereafter the petitioner was incorporated with Roberts, Smith, the attorney, and Edwards, the accountant, as the incorporators. The first meeting of the petitioner's stockholders was held on December 1, 1946, and at that meeting Fedevich, Roberts, and Edwards, their accountant, were elected as directors of the petitioner. On the same day, the first meeting of the directors was held at which all of the directors were present. Fedevich was elected president and treasurer of the petitioner and Roberts was elected vice-president and secretary. At that meeting, Roberts *93 read a letter, dated December 1, 1946, addressed to the petitioner and signed by him and Fedevich which provided as follows: "Be advised that the undersigned, Joseph J. Fedevich and Thomas J. Roberts, d.b.a. Canton Tool Mfg. Co., East Canton, Ohio, do hereby offer to sell to you for the price and upon the terms hereinafter set forth the following assets: "Machinery, fixtures, equip-
ment, tools and precision in-
struments, as set forth in
Schedule 1 attached hereto,
$96,890.61
Office furniture and equip-
ment, as set forth in Sched-
ule 2 attached hereto,
2,214.23
Prepaid Insurance - sundry
3,052.47
Prepaid Insurance - industrial
264.29
Inventory of material,
916.28
Supplies,
1,004.60
Work in Progress,
43,933.52
1944 International Truck,
639.02
Total,
$148,915.02
"We propose to allow you a credit of $1400.00 against the purchase price upon your agreement to assume and pay the partnership share of the vacation pay to our employees, which share of vacation pay approximates $1400.00. "For the foregoing assets, we are willing to accept from you two notes of $50,000.00 each, - each note to be payable in installments of not less than $5000.00 a *94 year, with the balance in full payable five years from date, and to carry interest at five percent per annum, one of said notes to be payable to Joseph J. Fedevich and the other to Thomas J. Roberts. We will be willing to permit the balance of $48,915.02 to stand with you as an open account, payable to * * * [Fedevich and Roberts]" Roberts moved the adoption of the following resolution: "WHEREAS, it is desirable, in pursuance of the corporate purposes of this corporation, that it acquire the assets of the partnership of Joseph J. Fedevich and Thomas J. Roberts, d.b.a. Canton Tool Mfg. Co., of East Canton, Ohio, as set forth in a certain letter from said partners, and in accordance with the terms of said letter which is attached to these minutes and made a part of this Resolution, and "WHEREAS, said price and terms are, in the judgment of this Board of Directors, fair and equitable, and the acquisition of such property, upon such terms, will be to the best interest of this corporation; "NOW, therefore, BE IT, and it is hereby: "RESOLVED: THAT THE SAID OFFER be, and the same is hereby, accepted, and the President and Secretary of this corporation be, and they are hereby, *95 authorized and directed to purchase said assets of Joseph J. Fedevich and Thomas J. Roberts, d.b.a. the Canton Tool Mfg. Co., East Canton, Ohio, in the name and on behalf of this corporation, and said officers are hereby authorized to complete and execute all necessary legal documents for the purpose of completing said purchase." Thereafter, on the same day, the assets mentioned in the letter of Fedevich and Roberts were transferred from the partnership to the petitioner. Also, $25,000 of partnership cash was transferred to the petitioner in payment for the 125 shares of the petitioner's stock subscribed for by Fedevich and a like number of shares subscribed for by Roberts. The following is a statement of the partnership assets and liabilities on December 1, 1946, prior to and after the above-mentioned transfer and a statement of the petitioner's assets and liabilities following the transfer: Partnership
Transferred
Partnership
Prior to
to the
After the
Assets
Transfer
Petitioner
Transfer
Current Assets
Cash
$ 32,142.59
$ 25,000.00
$ 7,142.59
Accounts receivable
$ 7,575.18
Less reserve for doubtful accounts
3,569.83
4,005.35
4,005.35
Deposits and sundry receivables
450.00
450.00
Inventories: Material and supplies
1,920.88
1,920.88
Work in process
43,933.52
43,933.52
Total Current Assets
$ 82,452.34
$ 70,854.40
$11,597.94
Fixed Assets
Land
$ 800.00
$ 800.00
Buildings
$ 14,494.13
Less allowances for depreciation
1,762.16
12,731.97
12,731.97
Plant machinery
$122,853.73
Office equipment
2,994.27
Truck
1,548.98
$127,396.98
Less allowances for depreciation
27,653.12
99,743.86
99,743.86
Deferred Charges
Prepaid industrial and general insurance and
taxes
3,354.62
2,893.21
461.41
Total Assets
$199,082.79
$173,491.47
$25,591.32
*96 Remainder
Assumed by
Owing by
Liabilities
Total
Petitioner
Partnership
Current Liabilities
Accounts payable, unpaid payroll and payroll taxes
$ 14,153.47
$14,153.47
Estimated accrued vacation pay
1,400.00
$ 1,400.00
Total
$ 15,553.47
$ 1,400.00
$14,153.47
Due to Fedevich and Roberts
$158,529.32
$147,091.47
$11,437.85
Capital
Capital stock (250 shares with a stated value of $100
per share)
25,000.00
25,000.00
Total Liabilities
$199,082.79
$173,491.47
$25,591.32
Although on or about December 1, 1946, the petitioner issued 125 shares of its stock to Fedevich and the same number of shares to Roberts, it did not issue to them the two notes of $50,000 each as provided for in their offer to petitioner and the latter's acceptance of the offer. Instead, those amounts, along with other amounts which were to be carried as open accounts payable by petitioner to Fedevich and Roberts, were entered as credits by Edwards, who was a director of the petitioner and who also was its accountant and had charge of its bookkeeping, to personal accounts for them set up on the books of the petitioner and designated "Notes Payable." These "Notes *97 Payable" accounts were running or continuous accounts to which the petitioner's payments of the personal expenses of Fedevich and Roberts and their withdrawals from the petitioner were debited and their advances to the petitioner were credited. Edwards continued as accountant for the petitioner and had charge of its bookkeeping until about the middle of October 1950 when petitioner employed John Bastyr who had been engaged in industrial accounting and who also had some experience in public accounting. From the inception of the petitioner until the closing of its books for the fiscal year ended May 31, 1951, Fedevich and Roberts made numerous withdrawals from the petitioner and also made numerous advances to it. Aside from the $25,000 transferred to the petitioner for stock, Fedevich and Roberts from the inception of the petitioner until July 1, 1950, advanced to it cash in the total amount of $138,383.69 and withdrew from it cash totaling $196,696.17. The account of Fedevich on the books of the petitioner showed a credit balance of $78,942.43 as of July 1, 1950, and the account of Roberts showed a credit balance of $54,045.75 as of the same date. On or about May 31, 1951, the petitioner *98 executed two promissory notes for $50,000 each dated July 1, 1950, and sometimes hereinafter referred to as the notes of May 31, 1951. One of the notes was made payable to Fedevich and the other to Roberts. The notes were payable "on demand with six months notice" and bore interest at the rate of 4 per cent per annum, the rate then being paid by petitioner on its current loans. The notes were signed by Fedevich as president and treasurer of the petitioner and by Roberts as vice-president and secretary. The execution of the notes occurred after Bastyr, the petitioner's then accountant, had told Fedevich and Roberts that he had looked over the petitioner's books and records and found that although the petitioner's board of directors at their first meeting held December 1, 1946, had authorized the issuance to each of them of a note for $50,000 in connection with the acquisition of partnership assets, he had not found that such notes had been issued and had suggested the issuance of the notes. The notes of May 31, 1951, were debited to the accounts of Fedevich and Roberts on the books of the petitioner under date of May 31, 1951, when the books were being closed for the fiscal year ended *99 on that date. After the books were closed, Fedevich's account showed a credit balance of $1,504.45 and Roberts' account showed a credit balance of $1,678.64. The notes did not represent any new capital which came into the business either on July 1, 1950, or May 31, 1951. As of May 31, 1951, the petitioner's current assets totaled $165,281.13, its current liabilities totaled $285,551.38, and the ratio of its indebtedness to equity capital was approximately 11 to 1. On August 7, 1951, the petitioner issued to Fedevich and Roberts checks in the amount of $2,000 each as payment of interest for the year ended June 30, 1951, on the notes which the petitioner had issued to them. The checks were endorsed by the payees and deposited to the credit of the petitioner. Since the petitioner filed its Federal income tax return on the basis of the fiscal year ended May 31, 1951, it deducted eleven-twelfths of the total of the foregoing checks, $4,000, or $3,666.68 as interest for that fiscal year in computing its income tax. The respondent determined that the amount of the deduction did not represent interest and disallowed the deduction. In computing its excess profits tax for the fiscal year *100 ended May 31, 1951, the petitioner also included the amount of the notes issued to Fedevich and Roberts, $100,000, as borrowed capital and deducted $3,666.68 as interest on borrowed capital. The respondent determined that the notes did not represent borrowed capital for excess profits tax purposes and disallowed the deduction taken. From the time it began business on December 1, 1946, through May 31, 1951, the petitioner continuously employed from approximately 35 to 50 persons with a weekly payroll of approximately $2,000 or more. From its inception, the petitioner was continually in need of working capital and made it a policy to operate on borrowed money. Many times Fedevich personally borrowed money from the bank and turned it over to petitioner. The reason he did so was that the bank considered that he was more able to repay the loans than the petitioner and this was true. On those occasions when it made loans directly to the petitioner, the bank required that all amounts showing on petitioner's books as owing to Fedevich and Roberts be subordinated to the bank loans. About 1948, the petitioner erected a new building, the construction of which was financed in part by a loan *101 of $60,000 made by The Peoples Bank, Canton, Ohio, to Fedevich and Roberts and their wives. The loan was secured by a mortgage on the building and all other assets of the petitioner. The loan was made in April 1948 and was repaid in full on February 24, 1953. By October 15, 1954, differences and disagreements had arisen between Fedevich and Roberts, and Fedevich considered it necessary "to buy out Mr. Roberts." At that time the principal amount of the notes of May 31, 1951, continued to remain at $50,000 each. As part of the over-all arrangement "to buy out Mr. Roberts," the petitioner executed two instruments on October 15, 1954. One of the instruments took the form of an agreement between petitioner and Roberts and the other took the form of a note from petitioner to Roberts. The agreement recited the sale by Roberts to petitioner of 125 shares of stock in it and the agreement of the petitioner to pay as consideration therefor the amount of $70,000, payable with interest, as follows: $1,000 per month beginning November 1, 1954, or one-half of the net earnings of the corporation, whichever was less, and continuing until $70,000 had been paid. Interest was to be paid quarterly at *102 the rate of 4 per cent per annum computed on the average unpaid balance at the end of each month of the preceding calendar quarter-year. The entire balance of the $70,000 remaining unpaid on October 15, 1964, was to be due and payable on that date. As a part of the agreement, Roberts agreed that for a period of 5 years after October 15, 1954, and for such further period as the petitioner might be obligated to him with respect to payment of any part of the $70,000, he would not directly or indirectly either as owner, partner, stockholder, agent, officer or employee, (a) engage within the radius of 100 miles of East Canton, Ohio, in the business then carried on by petitioner, or any part thereof, or in any business competitive with that of petitioner, or (b) divert or attempt to divert from petitioner any of its employees. Further, as a part of the agreement, Roberts agreed that the petitioner's obligation to pay him the $70,000 should be subordinate to all the petitioner's indebtedness then existing and to any future bank indebtedness created by petitioner; and that he would execute any such further agreements or instruments to evidence such subordination to such future bank indebtedness *103 as the petitioner might, from time to time, request. On the same day, October 15, 1954, the petitioner paid Roberts $15,000, took back the note of May 31, 1951, which it had issued to him and issued to him a new note dated October 15, 1954, for $35,000, due October 15, 1964, and bearing interest at the rate of 4 per cent per annum payable quarterly. The note by its terms not only subordinated the payment of the amount thereof to the petitioner's payment of the note of May 31, 1951, for $50,000 which petitioner had issued to Fedevich, but also subordinated payment to the payment of seven other notes totaling $16,000 which had been issued by petitioner in 1952 and 1953 to Fedevich and his relatives. The subordination was not to be affected by the renewal, extension or modification of any of the foregoing notes totaling $66,000. On December 1, 1946, Fedevich and Roberts did not intend to establish and there was not established between petitioner and them the relationship of debtor-creditor with respect to $100,000 of the partnership assets transferred by them to the petitioner. As a consequence of the issuance by the petitioner on or about May 31, 1951, of the notes of $50,000 each *104 to Fedevich and Roberts, there was not established between petitioner and them the relationship of debtor-creditor. Opinion The offer of Fedevich and Roberts to transfer partnership assets to the petitioner provided that the portion of the payment in excess of $100,000 was to stand with the petitioner as open accounts payable, one-half to each of them, and that for the $100,000 each of them was to receive a note from the petitioner for $50,000. The instant proceeding presents no question respecting the portion of the payment to be represented by open accounts payable but is concerned only with the $100,000 which was to be represented by notes of the petitioner. The primary question for determination here is whether on December 1, 1946, there was created between the petitioner, on the one hand, and Fedevich and Roberts, on the other, a debtor-creditor relationship with respect to the $100,000. Since Fedevich and Roberts were equal partners in the partnership, were equal owners of the stock of the petitioner, and, being two of the three directors of the petitioner, controlled the action of its board of directors, a disposition of the question depends in the last analysis on their *105 intention. The question of intention is a factual one to be resolved from a consideration of the entire record. Gooding Amusement Co., 23 T.C. 408, affd. 236 Fed. (2d) 159, certiorari denied 352 U.S. 1031; Edward G. Janeway, 2 T.C. 197, affd. 147 Fed. (2d)602. The offer of Fedevich and Roberts, dated December 1, 1946, to sell partnership assets to the petitioner and the acceptance on the same date of that offer by petitioner's board of directors provided for the issuance by petitioner to each, Fedevich and Roberts, of a note for $50,000, payable in installments of not less than $5,000 a year, with the balance payable in full 5 years from date, December 1, 1951, and to bear interest at the rate of 5 per cent per annum. Although the petitioner acquired the partnership assets on December 1, 1946, and thereafter used them in its business, the notes prescribed by the offer and acceptance were never issued. The prescribed annual installment payments of not less than $5,000 a year and the interest were not paid to Fedevich and Roberts who continued to be the sole stockholders, the officers, and directors of petitioner. *106 The amounts for which the notes were to be issued, together with the amounts which were to be carried as open accounts payable by petitioner to Fedevich and Roberts, were entered as credits to personal accounts for them set up on petitioner's books and designated "Notes Payable." These "Notes Payable" accounts were running or continuous accounts to which the petitioner's payments of personal expenses of Fedevich and Roberts and their withdrawals from petitioner were debited and their advances to the petitioner were credited. The foregoing situation continued without change until on or about May 31, 1951. On January 3, 1951, the Excess Profits Tax Act of 1950 was signed by the President. This act amended the Internal Revenue Code of 1939 by adding a new subchapter which was designated "Subchapter D - Excess Profits Tax." This subchapter imposed an excess profits tax on corporations and provided that a stated percentage of the daily amount of "borrowed capital" - "The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a * * * note" (sec. 439(b)(1)) - was includible in the daily *107 invested capital (sec. 458(c)) for the purpose of computing the excess profits tax. On or about May 31, 1951, or 4 1/2 years after the acquisition by petitioner of the partnership assets, and subsequent to the suggestion of the petitioner's then accountant, Fedevich and Roberts, as officers of the petitioner, issued to each of themselves a note of petitioner, dated July 1, 1950, for $50,000 payable "on demand with six months notice" and bearing interest at the rate of 4 per cent per annum, the rate then being paid by petitioner on its current loans. The notes contained no provisions respecting the payment of the principal in installments. Subsequently, in closing the petitioner's books for the year ended May 31, 1951, the amounts of the notes were debited to the "Notes Payable" accounts of Fedevich and Roberts on the books of the petitioner, leaving a credit balance of $1,504.45 in Fedevich's account and a credit balance of $1,678.64 in Roberts' account. When Fedevich was asked by counsel for the petitioner why the notes provided for in his and Roberts' offer and the petitioner's acceptance thereof were not issued on or about December 1, 1946, he replied as follows: "The only *108 explanation I can give to it is that we are mechanical men, not bookkeepers - especially I'm not. At that time we were pretty deep in the bottle forming machine and we were too busy making out as to worry about stocks and bonds and just kept on going. In fact, we still wouldn't have it today if I had not got Mr. Bastyr in." Since from December 1, 1946, through May 31, 1951, Fedevich was the president and treasurer of petitioner and as such its chief administrative officer and its chief financial officer, Roberts was vice-president and secretary of petitioner, and, on the theory here advanced by petitioner, were its creditors in the amount of $50,000 each payable in amounts of at least $5,000 a year, with interest, for 5 years at the end of which time the remainder was payable in full, it is difficult to conclude that parties dealing in an arm's length transaction would have been so indifferent and negligent as to their rights and responsibilities as Fedevich's testimony indicates was the case with him and Roberts. The record shows that from the time it began business on December 1, 1946, through May 31, 1951, it was the policy of the petitioner to operate on borrowed funds. As *109 disclosed by its balance sheets, the petitioner began business with a deficiency in working capital of more than $75,000 and by May 31, 1951, the deficiency was more than $120,000. Many times it was necessary for Fedevich on his own personal credit to obtain the money needed by petitioner to carry on its operations. On those occasions when the petitioner obtained loans directly from the bank, the bank required that the amounts shown on petitioner's books as indebtedness owing to Fedevich and Roberts be subordinated to the loans. Further, in order to obtain money needed in the petitioner's business, it was necessary for Fedevich and Roberts and their wives in April 1948 to execute their personal note for $60,000 to the bank secured by a mortgage on all the petitioner's assets. Although this note was paid in full by February 1953, nothing had been paid on the principal of either of the notes of May 31, 1951. Nor had any payment been made on the principal of either of the notes by October 15, 1954. The petitioner takes the position that the partnership business conducted by Fedevich and Roberts prior to the formation of the petitioner was a highly successful enterprise, that partnership *110 assets acquired by petitioner had an actual value of two or three times the book value at which petitioner acquired them, and that therefore the petitioner's actual capital was not only $25,000 for which cash was paid but that amount plus $148,000, or $296,000, or total capital of approximately $173,000 or approximately $320,000, that the foregoing values are demonstrated by petitioner's earnings after its formation and by Roberts' sale in 1954 for $70,000 of his stock in the petitioner for which he had paid only $12,500, or at a capital increase within 8 years of approximately 600 per cent. The record is entirely silent as to the partnership earnings for the years preceding the petitioner's formation and as to the total amount of capital which had been invested in it over those years. Such evidence as there is bearing on the question of the petitioner's earnings from December 1, 1946, to the end of the fiscal year ended May 31, 1949, indicates that its total net income for the 2 1/2 years was approximately $22,765. The record is silent as to the petitioner's income, if any, for the fiscal year ended May 31, 1950. The net income reported on petitioner's return for the fiscal year *111 ended May 31, 1951, is approximately $37,470. Obviously, the foregoing showing as to the petitioner's earnings does not establish that the partnership assets acquired by petitioner had the values contended for by petitioner. It is true that the instrument of October 15, 1954, recited that the petitioner agreed to pay Roberts $70,000 for his stock, and at the rate of $1,000 a month, or one-half of petitioner's earnings, whichever was less, until the full amount of $70,000 was paid, with any unpaid balance being due and payable on October 15, 1964. However, those payments were subordinated to the payment of all the petitioner's existing indebtedness on October 15, 1954, and any future bank indebtedness which the petitioner might incur. The agreement contained a further provision under which Roberts agreed that for a period of 5 years and for such further period as the petitioner might be obligated to him with respect to the payment of any part of the $70,000, he would not, within a radius of 100 miles of East Canton, Ohio, engage directly or indirectly in the business then carried on by petitioner, or any part thereof, or any business competitive with that of petitioner and would not *112 divert or attempt to divert from the petitioner any of its employees. Inasmuch as Roberts, since 1942, had been engaged in the business, first carried on by the partnership in East Canton, Ohio, and then conducted by the petitioner there, we think it clear that the $70,000 or some portion of it was for Roberts' agreement not to compete and not to divert or attempt to divert employees from the petitioner. The petitioner made no attempt to show what portion of the $70,000 was properly allocable to such agreement or what portion was allocable to the stock. Although the record does not show what salary Roberts received from the petitioner in 1954, it does show that he received a salary from the petitioner of $12,000 a year for each of the fiscal years ended May 31, 1948, and May 31, 1951, the same amount of salary as received by Fedevich in those years. Further, if it be assumed most advantageously to petitioner that petitioner pays Roberts $1,000 a month continuously until the full amount of $70,000 is paid, the agreement not to compete would be effective for 70 months. A salary at the rate of $12,000 a year would amount to $70,000 for that period. On the other hand, if petitioner does *113 not complete the payments until October 15, 1964, as it may do under the agreement, then the agreement not to compete would be effective for 10 years. However, final payment on October 15, 1964, has been subordinated to the payment of all the indebtedness of the petitioner existing on October 15, 1954, which, as we understand the record, included $66,000 of notes payable to Fedevich and his relatives, plus any bank indebtedness of the petitioner that may be outstanding on October 15, 1964. On the record presented, it may well be that substantially all of the $70,000 is properly allocable to Roberts' agreement not to compete, in which case nothing would remain to be allocated as payment for his stock. Examining the remainder of the arrangement entered into by the petitioner on October 15, 1954, "to buy out Mr. Roberts," we find that on that day the petitioner paid Roberts $15,000, took back the note of May 31, 1951, which petitioner had issued to him, and issued to him a new note dated October 15, 1954, for $35,000, due October 15, 1964, and bearing interest at the rate of 4 per cent per annum. Fedevich stated that the $15,000 paid to Roberts represented a payment on the note of May 31, 1951. In *114 view of the fact that under the over-all arrangement Roberts was disposing of his stock in the petitioner, the only thing which, under the petitioner's theory, gave him any voice in the direction and control of petitioner's affairs for a promise of the petitioner not shown to more than compensate him for his agreement not to compete, the foregoing statement of Fedevich has plausibility only if the note of May 31, 1951, be viewed as representing part of what Roberts had invested in the petitioner. The fact that payment of the new note for $35,000 was specifically subordinated to the payment of the note of May 31, 1951, for $50,000 issued by petitioner to Fedevich and to the payment of seven other notes, totaling $16,000, issued by petitioner to Fedevich and his relatives during 1952 and 1953, tends to support such a view. From a consideration of the entire record, we have concluded and found as a fact that on December 1, 1946, Fedevich and Roberts did not intend to establish, and there was not established between the petitioner and them, the relationship of debtor-creditor with respect to $100,000 of the partnership assets transferred by them to the petitioner; and that, as a consequence *115 of the issuance by petitioner on or about May 31, 1951, of the notes of $50,000 each to Fedevich and Roberts, there was not established between petitioner and them the relationship of debtor-creditor. Having reached the foregoing conclusion, we hold that the amount deducted by petitioner for the fiscal year ended May 31, 1951, as interest paid on the notes of May 31, 1951, was not properly deductible for income and excess profits tax purposes and that the notes did not represent "borrowed capital" within the meaning of section 439(b)(1) of the 1939 Code. The petitioner has abandoned the issue involving the correctness of the respondent's action in determining that a deduction of $485.92 representing legal fees and expenses paid in connection with the petitioner's incorporation and the issuance of its stock was not allowable. Decision will be entered under Rule 50.